**George I. NORMAN, Jr., formerly G. M. Leasing Corporation, Plaintiff and Appellant,**

v.

**MURRAY FIRST THRIFT & LOAN COMPANY, a Utah Corporation, Defendant and Respondent.**

No. 15880.

Supreme Court of Utah.

June 8, 1979.

Phil L. Hansen of Hansen & Hansen, Salt Lake City, for plaintiff and appellant.

David A. Greenwood of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

Before us is an interlocutory appeal to determine the validity of an order of the trial court. The order granted defendant's motion to dismiss G. M. Leasing Corporation, as plaintiff, and substituted George I. Norman, Jr., as the real party in interest. The order of the trial court is reversed, and the cause is remanded for trial with reinstatement of G. M. Leasing Corporation, as plaintiff. Costs to plaintiff.

In this opinion, G. M. Leasing Corporation will be identified as plaintiff, and George I. Norman, Jr., will be referred to as Norman.

Plaintiff was a Utah corporation, incorporated April 26, 1972. On December 12, 1972, plaintiff, represented by its vice-president, one Nelson, entered into a security agreement with defendant. Defendant lent plaintiff $80,000; and as collateral to secure the loan, plaintiff granted defendant a security interest in four valuable automobiles, the title to which were in plaintiff's name.

Subsequently, these four automobiles were seized by the Internal Revenue Service to satisfy the personal income tax liability of plaintiff's general manager, Norman. Norman became, and yet is, a fugitive from justice. Thereafter, defendant declared itself to be insecure and accelerated the loan obligation as provided in the parties' agreement. Two of these automobiles were sold by defendant.

On July 22, 1974, plaintiff filed this action to recover damages arising from the disposition of the two automobiles by defendant and to enjoin the sale of the two remaining automobiles, as proposed by defendant, to satisfy the remaining indebtedness and costs of the loan. Defendant filed an answer and counterclaim against plaintiff.

After seizure of the automobiles by the I.R.S., plaintiff filed an action in the federal court seeking return of the four vehicles from the federal government. The trial court granted the claimed relief, but was thereafter reversed on an appeal by the government. The Court of Appeals, Tenth Circuit, without citing any authority to establish the legal basis upon which the corporate veil should be pierced, ruled that based upon the evidence, plaintiff was Norman's (the taxpayer) alter ego.[1] The court merely reviewed the evidence to establish that plaintiff had no separate or independent existence; and that Norman, although not an incorporator, director, or officer, as general manager, exerted substantial, if not

1. *G. M. Leasing Corporation v. United States,* C.A. 10th, 514 F.2d 935 (1975).

exclusive, control over plaintiff. The court stated:

> Other evidence indicating that appellee [plaintiff] is taxpayer's [Norman's] alter ego is the fact that appellee was supposedly engaged in the automobile leasing business but that it leased no automobiles; it had no employees, paid no wages, paid no state sales or use tax, issued no stock and had no stockholder's meetings. Appellee contends that stock was issued but has presented no stock certificates, minutes of stockholders' meetings or other documentary evidence to substantiate its allegations.[2]

■ The ruling of the court cannot be deemed as predicated on the equitable alter ego doctrine, because in order to disregard the corporate entity, there must be a concurrence of two circumstances: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.[3] The Court of Appeals made no finding from the evidence in regard to the second factor, but denied plaintiff the return of the seized vehicles based on evidence supporting the first factor.

The United States Supreme Court, although nominally declining to review whether plaintiff was Norman's alter ego, did supply a legal basis to sustain the seizure of the vehicles. The Court stated:

> Under § 6321 of the Code, the assessments against Norman were a lien in favor of the United States upon all property belonging to Norman. If petitioner was Norman's alter ego, it had no countervailing effects for purposes of federal income tax. *Griffiths v. Commissioner,*

308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939); *Higgins v. Smith,* 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406 (1940). It would then follow that the Service could properly regard petitioner's assets as Norman's property subject to the lien under § 6321, and the Service would be empowered, under § 6331, to levy upon assets held in petitioner's name in satisfaction of Norman's income tax liability. . . .[4]

The two cases cited by the Supreme Court make it clear it was a separate tax doctrine, and not the equitable alter ego doctrine, that sustained the seizure of the vehicles. In *Higgins,* the taxpayer sought to take a loss on securities he sold to a corporation in which he was the sole shareholder. Admittedly, an actual corporation existed, but such an existence was considered only one incident necessary to complete an actual sale under the revenue code. Although title passed to the corporation, the taxpayer retained control. The court observed that transactions which do not vary control or change the flow of economic benefits, were to be dismissed from consideration. The court stated:

> . . . the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property.[5]

In *Griffiths,* the court stated:

---

**2.** At p. 940 of 514 F.2d.

**3.** *Dockstader v. Walker,* 29 Utah 2d 370, 510 P.2d 526 (1973); *Norman v. Del Elia,* 111 Ariz. 480, 533 P.2d 537 (1975); *Automotriz Del Golfo De California v. Resnick,* 47 Cal.2d 792, 306 P.2d 1 (1957).

**4.** 429 U.S. 338, 350–351, 97 S.Ct. 619, 627–28, 50 L.Ed.2d 530 (1977).

**5.** At pp. 477–478 of 308 U.S., at p. 358, of 60 S.Ct.

We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." [Citation] And it makes no difference that such "command" may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. . . .[6]

Thus, there are two separate and independent doctrines which act as a basis for the disregard of the corporate fiction. The one is the equitable alter ago doctrine; the other involves disregarding the corporate fiction whenever it serves the purposes of the tax statute. It was the latter doctrine that was controlling in the federal cases where plaintiff attempted to effect the return of the vehicles seized by the I.R.S.

On April 24, 1978, almost four years after the complaint was filed by plaintiff, defendant filed its motion to substitute Norman as the real party in interest for plaintiff. Defendant urged successfully plaintiff had litigated in the federal cases the issue of whether it was the alter ego of Norman and the issue had been determined adversely to plaintiff's position. Defendant invoked the doctrine of collateral estoppel to preclude the relitigation of the issue of alter ego. Defendant also argued successfully that under Rule 17(a), U.R.C.P., that Norman was the real party in interest and should therefore be substituted for plaintiff.

Rule 17(a), U.R.C.P., provides:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, *a party with whom or in whose name a contract has been made for the benefit of another*, or a party authorized by statute *may sue in his own name without joining with him the party for whose benefit the action is brought*; . . . [Emphasis supplied.]

■ The security agreement and loan were made in the name of plaintiff. Under the specific provisions of Rule 17(a), plaintiff was the real party in interest.

At common law an action on a contract might, and in most cases must, be brought by a party to it. It is clear, therefore, that the person named in this section is a real party in interest . . .. The inclusion was to make clear that a party with whom or in whose name a contract had been made for the benefit of another was not to be deprived of his common law right because another was the beneficial owner, and also to make certain that he need not join the beneficial owner. . . .[7]

In *P & M Vending Co., Inc. v. Half Shell of Boston, Inc.*,[8] defendant urged plaintiff's parent corporation and not plaintiff was the real party in interest. The court stated the contention was without merit. The plaintiff, as a duly organized and existing Colorado corporation, had a distinct legal entity with the capacity to contract and sue on its own behalf. The court cited the Colorado Rules of Civil Procedure, 17(a), which is identical to Rule 17(a), U.R.C.P. The court stated:

. . . Hence, even if the contract involved here was entered into for the ultimate benefit of plaintiff's parent corporation, plaintiff was a real party in interest entitled to bring the action without joining its parent corporation.

■ The facts of this case should be reiterated. Plaintiff is seeking damages it allegedly has sustained by reason of the improper disposition of collateral, the title to which plaintiff held and which defendant sold pursuant to an agreement executed by plaintiff. Under such circumstances, plaintiff is the real party in interest under Rule 17(a), for even though a shareholder owns

---

**6.** At pp. 357–358 of 308 U.S., at p. 278, of 60 S.Ct.

**7.** 3A Moore's Federal Practice (2nd Ed.) § 17.-13[1], p. 17–159.

**8.** Colo.App., 579 P.2d 93, 95 (1978).

**1032**

all, or practically all, of the stock in a corporation, such a fact does not authorize him to sue as an individual for a wrong done by a third party to the corporation.[9]

■ There is another aspect of this case which caused the trial court to err in the application of the doctrine of collateral estoppel. This doctrine, which is also identified as issue preclusion, generally provides that issues which have actually been decided against a party in a prior action may be relied upon by an opponent in a subsequent case, although the opponent was not a party in the prior action.[10] However, the foregoing generalization is subject to qualification. To determine whether it is appropriate to apply collateral estoppel, necessitates three further inquires: First, whether the issues presented in the current litigation are in substance the same as resolved in the prior litigation; second, whether the controlling facts or legal principles have changed significantly since the prior judgment; third, whether other special circumstances warrant an exception to the normal rules of preclusion.[11]

■ As previously stated in this opinion, the issue in substance in the prior federal litigation involved federal tax law doctrine concerning disregard of the corporate fiction for purpose of the Internal Revenue Code. In contrast, in the current action, the issue involves the equitable alter ego doctrine. This doctrine by its very nature constitutes a special circumstances situation, which creates an exception to the normal rules of preclusion. This exception is illustrated in *Cooperman v. California Unemployment Insurance Appeals Board*,[12] wherein the court stated:

The fact that a corporate entity has been disregarded for some purposes in an

action does not mean that it will be disregarded for all purposes. [Citation] Thus, in the present case, the determination that the corporation and Cooperman were one and the same for purposes of unemployment compensation does not mean that Cooperman will necessarily be held personally liable for a tort or contract action brought against his corporation. [Citations]

This Court has reiterated that it is the particular circumstances of the case that determine whether the application of the alter ego doctrine is appropriate.

. . . Before the acts and obligations of a corporation may be recognized as those of a particular person under the alter ego doctrine, it must be shown that adherence to the corporate entity *under the particular circumstances would sanction a fraud or promote injustice.*[13] [Emphasis supplied.]

The trial court erred in applying the doctrine of collateral estoppel in this action.

WILKINS, HALL and STEWART, JJ., concur.

CROCKETT, C. J., does not participate herein.

**9.** *Erlich v. Glasner*, C.A. 9th, 1969, 418 F.2d 226; *Gentry v. Howard*, W.D.La., 1973, 365 F.Supp. 567.

**10.** *Richards v. Hodson*, 26 Utah 2d 113, 485 P.2d 1044 (1971).

**11.** *Montana v. United States*, —— U.S. ——, 99 S.Ct. 970, 59 L.Ed.2d 210, 218 (1979).

**12.** 49 Cal.App.3d 1, 122 Cal.Rptr. 127, 132 (1975).

**13.** *Grover v. Garn*, 23 Utah 2d 441, 448, 464 P.2d 598, 603 (1970); also see *Shaw v. Bailey-McCune Company*, 11 Utah 2d 93, 355 P.2d 321 (1960); *Centurian Corporation v. Fiberchem, Inc.*, Utah, 562 P.2d 1252 (1977); *Chatterley v. Omnico, Inc.*, 26 Utah 2d 88, 485 P.2d 667 (1971).