2010 UT App 113

**JONES & TREVOR MARKETING, INC., Plaintiff and Appellant,**

v.

**Jonathan L. LOWRY; Nathan Kinsella; Financial Development Services, Inc.; Jeremy Warburton; John Neubauer; and Esbex.com, Inc., Defendants and Appellees.**

No. 20080904–CA.

Court of Appeals of Utah.

May 6, 2010.

issue had been tried pursuant to the Water Users'

pleadings or the express consent of the parties.

Stephen Quesenberry and Jessica Griffin Anderson, Provo, for Appellant.

Earl Jay Peck and R. Christopher Preston, Salt Lake City, for Appellees.

Before Judges ORME, BENCH, and GREENWOOD.[1]

## OPINION

ORME, Judge:

¶1 Plaintiff Jones & Trevor Marketing, Inc. (J & T) appeals the district court's grant of summary judgment in favor of defendants Jonathan L. Lowry and Nathan Kinsella. We affirm.

## BACKGROUND

¶2 Lowry and Kinsella created and were the sole shareholders, officers, and directors of defendant Financial Development Services, Inc. (FDS), created in 1998 to provide sales and telemarketing services, and of defendant Esbex.com (Esbex), created in 2000 to fill the orders FDS received. In January 2002, J & T and FDS entered into a Sales and Marketing Agreement (the Contract) whereby FDS marketed and sold, in exchange for commissions, certain courses developed by J & T.[2] Defendant John Neubauer, the FDS employee responsible for its day-to-day operations, was the main contact with J & T and prepared the weekly reconciliation reports sent to J & T.

¶3 Due to recurring problems with FDS's payments to J & T and with J & T's product shipments, the relationship dissolved, culminating in FDS sending a letter, dated July 19, 2002, and signed by Lowry, purporting to cancel the Contract. J & T then filed a complaint alleging FDS breached the Contract and making other claims against FDS and its employees and officers. This appeal focuses solely on J & T's claims against Lowry and Kinsella, which included alter ego and a laundry list of torts: theft by conversion, fraudulent misrepresentation, constructive fraud, fraudulent nondisclosure, and intentional interference with business relations. The district court granted Lowry and Kinsella summary judgment, dismissing the claims against them and reserving only J & T's fraudulent misrepresentation claim as against Lowry. The court subsequently granted summary judgment in favor of Lowry on this claim as well. J & T now appeals.[3]

## ISSUE AND STANDARD OF REVIEW

¶4 J & T asserts on appeal that disputed facts existed that should have precluded the district court from granting Lowry and Kinsella summary judgment. Summary judgment is properly entered when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). On appeal, "[w]e evaluate the evidence in the light most favorable to the party opposing summary judgment," *Doctors' Co. v. Drezga*, 2009 UT 60, ¶9, 218 P.3d 598, and "review a district court's decision to grant summary judgment for correctness, giving no deference to the district court," *Raab v. Utah Ry. Co.*, 2009 UT 61, ¶10, 221 P.3d 219.

## ANALYSIS

### I. Alter Ego

¶5 J & T argues that because genuine issues of material fact existed, the district

---

1. Judges Russell W. Bench and Pamela T. Greenwood heard this case as regular members of the Utah Court of Appeals. They both retired from the court on January 1, 2010, before voting on this case and before this decision issued. Hence, they are designated herein as Senior Judges. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

2. These courses offered instruction on "how to buy tax lien certificates and engage in other similar activities to make money."

3. During the course of the litigation, both FDS and Esbex dissolved due to insolvency, and a default judgment was entered against them. The case against named defendant Jeremy Warburton was dismissed with prejudice. A previous appeal, filed before the second summary judgment order, was voluntarily dismissed, and the case was remitted to the district court. After entering the order granting Lowry summary judgment on the fraudulent misrepresentation claim, the district court entered certification of finality pursuant to rule 58A of the Utah Rules of Civil Procedure.

court incorrectly granted Lowry and Kinsella summary judgment on J & T's alter ego claims.[4] Specifically, J & T asserts that "[alt]hough FDS and Esbex were struggling to meet their financial responsibilities, Lowry and Kinsella often took money from the corporations for their personal use" and that, "[s]tanding alone," this evidence creates a genuine issue of fact that precludes summary judgment. We disagree.

¶ 6 To preclude summary judgment, a disputed fact must be material. *See* Utah R. Civ. P. 56(c) (stating that summary judgment is allowed when "there is no genuine issue as to any *material* fact") (emphasis added). The disputed fact recited by J & T is not material because even if it were true, it is not enough, by itself, to suggest applicability of the alter ego theory, especially in the absence of any facts bearing on the other elements and factors required to prove the alter ego theory. *See generally Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979) (setting forth the requirements to prove alter ego).

■ ¶ 7 The alter ego doctrine's first prong requires proof of "[s]uch a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter ego of one or a few individuals[.]" *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 30, 147 P.3d 515 (first alteration in original) (citation and internal quotation marks omitted). *Accord Norman*, 596 P.2d

at 1030. "Significant factors" considered by courts "under the first prong are":

"(1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) *the use of the corporation as a facade for operations of the dominant stockholder or stockholders;* and (8) the use of the corporate entity in promoting injustice or fraud."

*d'Elia*, 2006 UT App 416, ¶ 30, 147 P.3d 515 (emphasis added) (quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct.App.1987)).

■ ¶ 8 J & T's argument focuses almost exclusively on the emphasized factor,[5] "the use of the corporation as a facade for operations of the dominant stockholder or stockholders." *Id.* Evidence that may establish this factor includes a "[f]ailure to distinguish between corporate and personal property, *the use of corporate funds to pay personal expenses without proper accounting,* and failure to maintain complete corporate and financial records[.]" *Colman*, 743 P.2d at 786 n.3 (emphasis added).

■ ¶ 9 Although J & T makes broad accusations that "Lowry and Kinsella ... freely took money from the corporations' accounts without proper accounting," the evidence presented to the district court and called to our attention on appeal, viewed in the light most favorable to J & T, does not support the contention that the money was

4.  We note that our opinion considers J & T's argument as framed on appeal, that is, that summary judgment was inappropriate because disputed facts existed. *See generally* Utah R. Civ. P. 56(c). J & T did not meaningfully argue here or to the district court that summary judgment was procedurally inappropriate, i.e., that the court improperly shifted the burden to J & T to prematurely prove its case, *see generally Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600, or that the court improperly refused a request to extend discovery under rule 56(f), *see* Utah R. Civ. P. 56(f) (allowing a court, upon a party's adequate showing, to deny summary judgment or grant a continuance so additional depositions or discovery may be completed). Accordingly, we have no occasion to consider such questions on appeal. *See State v. Robison*, 2006 UT 65, ¶ 22, 147 P.3d 448 (stating that "[o]ther than for jurisdictional

reasons [the court of appeals] should not normally search the record for unargued and unbriefed reasons to reverse a [district] court judgment") (alterations in original) (citation and internal quotation marks omitted).

5.  We note that J & T makes a conclusory reference to FDS and Esbex being "undercapitalized because of the actions of Lowry and Kinsella." Because this characterization lacks any record citation or argument related specifically to the requirements of undercapitalization, *see* Utah R.App. P. 24(a)(9); *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 n.10 (Utah Ct.App.1988) (discussing undercapitalization), we assume this contention is closely related to J & T's claim that Lowry and Kinsella took money from FDS for their personal use and do not separately consider undercapitalization.

taken "without proper accounting." *Id. Cf. Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 36, 21 P.3d 198 ("[M]ere conclusory allegations . . ., unsupported by a recitation of relevant surrounding facts, are insufficient to preclude . . . summary judgment.") (second omission in original) (citations and internal quotation marks omitted). The evidence properly of record [6] showed that although Lowry and Kinsella took money from FDS when it was struggling to meet its other financial obligations, the money was accounted for, and no evidence was produced that this accounting was done improperly. *Cf. d'Elia*, 2006 UT App 416, ¶¶ 28, 32, 34, 147 P.3d 515 (refusing to pierce the corporate veil when, inter alia, the court determined that although the owner received distributions, they "were not inappropriate").

¶ 10 Even if we were to accept uncritically the accusations that the money taken was improperly accounted for or wrongly distributed and used for purely personal purposes, we do not agree with J & T's statement that "[s]tanding alone" this is enough to preclude summary judgment.[7] Without any evidence of the other alter ego factors, we cannot gauge the materiality of the one factor on which evidence was presented. Therefore, we conclude that summary judgment was appropriate because the evidence was insufficient to show a material dispute of fact relative to whether Lowry and Kinsella were alter egos of FDS or Esbex.[8]

## II.  Torts

■ ¶ 11 J & T also argues that the district court erred in granting summary judgment on its various tort claims. Aside from liability premised on an alter ego theory, "an officer or director of a corporation is not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, *but can only incur personal liability by participating in the wrongful activity.*" *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶¶ 38–39, 147 P.3d 515 (emphasis in original) (citation and internal quotation marks omitted).

### A.  Fraudulent Misrepresentation

■ ¶ 12 J & T asserts that summary judgment was inappropriate on its fraudulent misrepresentation claim because disputed property was not kept separate; "officers and directors played little, if any, role in the operation of [the] corporate entities"; "there was an almost complete failure to keep and maintain corporate records"; and the corporate entities "were used as a facade for defendant's personal business operations"); *Lyons v. Lyons*, 340 So.2d 450, 451 (Ala.Civ.App.1976) ("Defendant operated the corporation as his alter ego, intermingling the corporate funds with those of his own. There were no corporate meetings, minutes or records regularly kept except a bank account. Defendant was not paid a salary by the corporation but used funds in the corporate account as if they were his own. He failed to deposit thousands of dollars in corporate cash receipts and used such cash as his personal funds.").

---

**6.** We note that some of the evidence referred to in J & T's brief derives solely from Neubauer's stricken bankruptcy deposition testimony and, as such, we do not consider that evidence.

**7.** J & T asserts that producing evidence on one of the eight factors evaluated in the first prong of alter ego analysis "is sufficient to raise a question of fact" that would preclude summary judgment. However, the cases J & T cited all analyzed more than a single factor to establish the alter ego doctrine's first prong—a point that J & T seems to concede by stating, with our emphasis, that "[c]ourts frequently disregard the corporate form where only *a few* of the [factors] are present in the case." *See Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 43, 47 (Utah Ct.App.1988) (determining summary judgment that dismissed an alter ego claim was inappropriate when the evidence showed that parent corporation owned 100% of subsidiary corporation's stock and "has paid some of its debts," that subsidiary was undercapitalized, and that subsidiary's "directors and officers d[id] not act independently of" parent corporation); *Colman v. Colman*, 743 P.2d 782, 787–88 (Utah Ct.App. 1987) (affirming a trial court's finding of alter ego when substantial evidence showed corporate formalities were ignored; personal and business

**8.** Because J & T fails to demonstrate a meaningfully factual dispute relevant to the first prong, we do not discuss the second prong, or "fairness requirement," of the alter ego doctrine, i.e., "if [unity of interest is] observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity." *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 30, 147 P.3d 515 (citation and internal quotation marks omitted). *Accord Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979).

material facts existed.[9] The alleged misrepresentations occurred when FDS, having submitted its letter purporting to terminate the Contract and stating that FDS would no longer sell J & T's products, continued to sell J & T's products in violation of the Contract provision stating that FDS would cease selling the products upon the Contract's termination. However, J & T fails to persuade us that these statements were material misstatements of present fact, as is required to show fraud.[10] *See generally Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 41, 56 P.3d 524. When a party claims, as J & T does here, that the misrepresentations concerned a promise of future performance, the promise will only be treated as "concerning a presently existing material fact," *id.*, if the party shows that when the promise was made it was "made with a present intent not to perform and made to induce a party to act in reliance on that promise," *Von Hake v. Thomas*, 705 P.2d 766, 770 (Utah 1985).

¶ 13 Even if we were to accept that the evidence showed that sales were made after the Contract was terminated by the letter,[11] no evidence was presented to suggest that at the time Lowry signed the Contract or sent the termination letter that he intended not to perform the promise to cease selling J & T products after termination of the Contract. To the contrary, evidence was presented by Lowry that showed he gave an instruction to Neubauer, which was never rescinded, to cease selling J & T's products.

¶ 14 J & T also asserts that because two different judges decided summary judgment on the fraudulent misrepresentation claim differently, it must be concluded that material facts existed.[12] We disagree. "[A] judge can change his or her mind any time up until the entry of final judgment, which is true even if the judge has taken over the case from another judge, ... because ... the two judges, while different persons, constitute a single judicial office[.]" *State v. Ruiz*, 2009 UT App 121, ¶ 10, 210 P.3d 955 (citations and internal quotation marks omitted), *cert. granted*, 221 P.3d 837 (Utah 2009). Therefore, we affirm the district court's grant of summary judgment on J & T's fraudulent misrepresentation claim.

### B. J & T's Other Tort Claims

¶ 15 As for J & T's contention that disputed material facts prevented summary judgment on its conversion claim,[13] we

---

9. As with its alter ego claim, *see supra* note 4, J & T focused its argument on the existence of disputed facts and not on summary judgment being procedurally inappropriate. Therefore, we limit our discussion to J & T's specific argument.

10. As summarized by our Supreme Court, "[t]o successfully establish a fraud claim, the party asserting fraud must show by clear and convincing evidence"
   (1) [t]hat a representation was made; (2) *concerning a presently existing material fact;* (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.
   *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 41, 56 P.3d 524 (second alteration in original) (emphasis added) (citation and internal quotation marks omitted).

11. J & T's record citation supporting its contention that sales were made after the Contract's termination included 244 pages, part of which was Neubauer's stricken deposition. Our review

of the evidence cited has revealed no evidence about sales being made after the Contract was cancelled on July 19, 2002. However, because the district court and the parties seem to have assumed that it had been established that sales were made after the termination of the Contract, we treat the issue on this basis.

12. We note that the first time the district court considered the fraudulent misrepresentation claim, it determined that evidence existed showing "that FDS disregarded" the directive to cease selling J & T's products. However, FDS disregarding the directive does not make Lowry personally liable unless it can be shown that Lowry "participat[ed] in the wrongful activity," *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 38, 147 P.3d 515 (emphasis, citation, and internal quotation marks omitted).

13. To prove conversion, a party must establish "an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession," and that the party "is entitled to immediate possession of the property at the time of the alleged conversion." *Bennett v. Huish*, 2007 UT App 19, ¶ 31, 155 P.3d 917 (emphasis, citations, and internal quotation marks omitted).

conclude that the evidence relied on was not adequately supported by the record citations given or, even if viewed in the light most favorable to J & T, was misstated. For example, J & T claims that "Lowry and Kinsella repeatedly hid payments from J & T," but relies solely on Neubauer's stricken bankruptcy deposition testimony to support this statement. And, contrary to this statement, there was undisputed evidence that showed Neubauer—not Lowry or Kinsella—prepared the reconciliation reports that determined what J & T would be paid. Because the allegedly disputed facts were not supported by record evidence, the district court correctly granted Lowry and Kinsella summary judgment on J & T's conversion claim.

¶ 16 The district court also correctly granted summary judgment on J & T's constructive fraud claim.[14] Although J & T claims that a confidential relationship existed by virtue of the Contract, it did not demonstrate how the Contract created a confidential relationship nor did it point to evidence that J & T had "been induced to relax the care and vigilance [it] would ordinarily exercise," as would have been otherwise required to establish a confidential relationship based on the Contract. *Wardley Corp. v. Welsh,* 962 P.2d 86, 90 n.5 (Utah Ct.App.1998) (citation and internal quotation marks omitted). J & T's related fraudulent nondisclosure claim fails for a similar reason, i.e., no evidence was presented to support the proposition that Lowry and Kinsella had "a legal duty to communicate." [15] *Yazd v. Woodside Homes Corp.,* 2006 UT 47, ¶ 35, 143 P.3d 283.

¶ 17 Finally, we affirm the district court's grant of summary judgment on J & T's claim of intentional interference with a contractual relationship.[16] Once again, the evidence J & T references to support its claim is found in Neubauer's stricken deposition testimony or is not supported by J & T's record citations. And even if the allegations were supported by evidence, they do not demonstrate an improper purpose or means, i.e., that Lowry and Kinsella's "predominant purpose was to injure" J & T or that Lowry and Kinsella's "means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession." *Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶ 20, 116 P.3d 323 (citations and internal quotation marks omitted). Therefore, the district court also properly granted Lowry and Kinsella summary judgment on the claim of intentional interference with a contractual relationship.

## CONCLUSION

¶ 18 J & T has failed to demonstrate that material facts were in dispute. We therefore affirm the district court's grant of summary judgment in favor of Lowry and Kinsella.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Senior Judge and PAMELA T. GREENWOOD, Senior Judge.

---

**14.** To establish constructive fraud, two elements must be shown: "(i) a confidential relationship between the parties; and (ii) a failure to disclose material facts." *d'Elia v. Rice Dev., Inc.,* 2006 UT App 416, ¶ 51, 147 P.3d 515 (citation and internal quotation marks omitted).

**15.** "The three elements of fraudulent concealment are . . .: (1) there is a legal duty to communicate information, (2) the nondisclosed information is known to the party failing to disclose, and (3) the nondisclosed information is material."

*Yazd v. Woodside Homes Corp.,* 2006 UT 47, ¶ 35, 143 P.3d 283.

**16.** To establish a claim for intentional interference with a contractual relationship, "a plaintiff must demonstrate that '(1) . . . the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff.' " *Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶ 20, 116 P.3d 323 (omission in original) (citation omitted).