2012 UT 39

**JONES & TREVOR MARKETING, INC., Plaintiff and Petitioner,**

v.

**Jonathan L. LOWRY, Nathan Kinsella, Financial Development Services, Inc., Jeremy Warburton, John Neubauer, and Esbex.com, Inc., Defendants and Respondents.**

No. 20100449.

Supreme Court of Utah.

June 29, 2012.

---

Stephen Quesenberry, Jessica Griffin Anderson, Provo, for petitioner.

Earl Jay Peck, R. Christopher Preston, Salt Lake City, for respondents.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 In this case, petitioner Jones & Trevor Marketing (J & T Marketing) appeals the dismissal of its suit alleging various contract and tort claims based on an alter ego theory of liability. The district court held that J & T Marketing had not demonstrated sufficient facts to support its alter ego theory. It therefore granted summary judgment against J & T Marketing on its tort and contract claims that rested on its alter ego theory. On appeal, the Utah Court of Appeals affirmed. We granted certiorari to address whether the court of appeals erred in affirming the district court's grant of summary judgment on the alter ego theory. We affirm the dismissal of J & T Marketing's suit.

¶ 2 On certiorari, J & T Marketing contends that the court of appeals erred in applying the factors set forth in *Colman v. Colman*, 743 P.2d 782 (Utah Ct.App.1987). In *Colman*, the Utah Court of Appeals articulated eight factors to aid courts in determin- ing whether to pierce the corporate veil. *Id.* at 786. In this case, the Utah Court of Appeals affirmed summary judgment against J & T Marketing because J & T Marketing had provided evidence of only one of the eight *Colman* factors. *Jones & Trevor Mktg., Inc. v. Lowry*, 2010 UT App 113, ¶¶ 8, 10, 233 P.3d 538. J & T Marketing claims that this was in error and contends that evidence supporting even a single *Colman* factor may be sufficient to raise a disputed issue of material fact that would preclude summary judgment.

¶ 3 We address three related issues. First, because we have never addressed the *Colman* factors, we consider their usefulness in determining whether to pierce the corporate veil. We adopt the factors, but empha- size that they are merely useful tools for assessing claims of alter ego liability rather than required elements of such claims. Sec- ond, we determine that there is no particular formula for the number of factors a party must demonstrate to establish alter ego lia- bility or to avoid summary judgment on a claim based on an alter ego theory of liabili- ty. Instead, courts must examine the entire relationship between a corporation and its officers and determine whether there are any genuine issues of material fact regarding the party's alter ego theory that would prevent summary judgment. Finally, we apply these concepts to this case and hold that J & T Marketing failed to present a genuine issue of material fact that would preclude sum- mary judgment. We therefore affirm the summary judgment order dismissing J & T Marketing's claims for alter ego liability.

## BACKGROUND

¶ 4 This case arises from a contract dispute between J & T Marketing and the owners of Financial Development Services (FDS), Jon- athan Lowry and Nathan Kinsella. Lowry and Kinsella incorporated FDS as a company dedicated to providing sales and telemarket- ing services. Later, Lowry and Kinsella cre- ated the company Esbex.com (Esbex) to fill FDS's orders.

¶ 5 FDS entered into an agreement with J & T Marketing. J & T Marketing developed

courses that purported to instruct people how to make money by purchasing tax lien certificates. Under the agreement, FDS would market and sell J & T Marketing's courses in exchange for commissions. The relationship quickly dissolved, and FDS sent a letter to J & T Marketing purporting to cancel the agreement. J & T Marketing responded by filing a complaint against FDS and Esbex for breach of contract.

¶ 6 Months after the suit was filed, FDS and Esbex became insolvent and were voluntarily dissolved. J & T Marketing then amended its complaint against FDS to add claims against Lowry and Kinsella in their individual capacities. In its amended complaint, J & T Marketing alleged five causes of action against Lowry and Kinsella, including theft by conversion, fraudulent misrepresentation, constructive fraud, fraudulent nondisclosure, and intentional interference with business relations. Lowry and Kinsella moved for summary judgment on each of these claims. J & T Marketing opposed summary judgment. Specifically, J & T Marketing opposed the constructive fraud and fraudulent nondisclosure claims on the merits and opposed the conversion, fraudulent misrepresentation, and intentional interference claims by arguing that Lowry and Kinsella were the alter egos of FDS. The district court granted summary judgment in favor of Lowry and Kinsella on all claims. The district court addressed the constructive fraud and fraudulent nondisclosure claims on the merits and then determined that because J & T Marketing could not prove its alter ego theory of liability, it could not sustain its underlying claims for conversion, fraudulent misrepresentation, and intentional interference against Lowry and Kinsella.[1] Subsequently, the district court entered a default judgment against the insolvent companies, FDS and Esbex.

¶ 7 J & T Marketing appealed the district court's summary judgment order. The Utah Court of Appeals affirmed. *Jones & Trevor Mktg., Inc. v. Lowry,* 2010 UT App 113, ¶ 18, 233 P.3d 538. Applying the eight factors that it had first enunciated in its 1987 decision, *Colman v. Colman,* 743 P.2d 782 (Utah Ct. App.1987), the court of appeals held that Lowry and Kinsella were entitled to summary judgment on the alter ego theory because J & T Marketing could not point to sufficient evidence to support that theory. *Jones & Trevor Mktg.,* 2010 UT App 113, ¶¶ 5–10, 233 P.3d 538. Specifically, while J & T Marketing had offered evidence that Lowry and Kinsella took money from the corporations for their personal use, there was no evidence suggesting that these withdrawals were improperly accounted for. *Id.* ¶ 9. The court found that the absence of any such evidence was fatal to J & T Marketing's alter ego theory because the mere fact that Lowry and Kinsella took money from the company for their personal use was "not enough, by itself, to suggest applicability of the alter ego theory, especially in the absence of any facts bearing on the other elements and factors required to prove the alter ego theory." *Id.* ¶ 6; *see also id.* ¶ 10.

¶ 8 J & T Marketing petitioned for certiorari review. Specifically, it asked that we review the court of appeals' dismissal of both its alter ego theory and its fraudulent misrepresentation claim. We granted the petition only as to the alter ego theory.[2]

## STANDARD OF REVIEW

¶ 9 "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *Richards v. Brown,* 2012 UT 14, ¶ 12, 274 P.3d 911 (internal quotation marks omitted). Summary judgment is appropriate

---

1. Alter ego theory is not an independent claim for relief; rather, it is a theory of liability. *See Bushnell v. Barker,* 2012 UT 20, ¶ 13, 274 P.3d 968. Nonetheless, the dismissal of J & T Marketing's alter ego theory of liability has consequences in this case because the district court dismissed three of J & T Marketing's tort and contract claims against Lowry and Kinsella because they relied on J & T Marketing's alter ego theory.

2. In its opening brief to this court, J & T Marketing also briefed the fraudulent misrepresentation issue. After Lowry and Kinsella moved to strike, J & T Marketing voluntarily withdrew the portion of its brief addressing fraudulent misrepresentation.

when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). "An appellate court reviews a [lower] court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (internal quotation marks omitted).

## ANALYSIS

¶ 10 J & T Marketing argues that the court of appeals erred in affirming summary judgment in favor of Lowry and Kinsella. First, J & T Marketing argues that the court of appeals erred in its application of the *Colman* factors. Second, J & T Marketing argues that the court of appeals erred in affirming summary judgment because there were material issues of disputed fact that precluded judgment on its alter ego theory.

¶ 11 This appeal requires us to address three related issues. First, we must determine whether to adopt the *Colman* factors relied on by the Utah Court of Appeals in its consideration of the alter ego theory. Second, we must decide whether a disputed issue of fact going to a single factor is sufficient to defeat a motion for summary judgment on an alter ego theory. Finally, we must determine whether there are material disputed facts in this case that rendered summary judgment improper.

## I. WE ADOPT THE *COLMAN* FACTORS AS USEFUL GUIDELINES TO AID COURTS IN DETERMINING WHETHER TO PIERCE THE CORPORATE VEIL

¶ 12 In *Colman v. Colman*, the Utah Court of Appeals articulated eight factors to be considered in evaluating claims predicated on a theory of alter ego liability. 743 P.2d 782, 786 (Utah Ct.App.1987). In this case, both parties assume the applicability of the *Colman* factors, but they disagree as to how many factors are necessary to establish alter ego liability. Because this court has never considered the *Colman* factors, we take this opportunity to address them.

¶ 13 "Ordinarily a corporation is regarded as a legal entity, separate and apart from its stockholders." *Dockstader v. Walker*, 29 Utah 2d 370, 510 P.2d 526, 528 (1973). "The purpose of such separation is to insulate the stockholders from the liabilities of the corporation, thus limiting their liability to only the amount that the stockholders voluntarily put at risk." *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 46 (Utah Ct.App.1988). The alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation. *See, e.g., Dockstader*, 510 P.2d at 528 (noting that "[t]he term 'alter ego' is used to describe a situation where the courts go behind the corporate entity and hold a stockholder liable for the debts of the corporation"). If a party can prove its alter ego theory, then that party may "pierce the corporate veil" and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with the corporate entity. *See id.*

¶ 14 In *Norman v. Murray First Thrift & Loan Co.*, we adopted a two-prong test to determine when a party may pierce the corporate veil:

(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

596 P.2d 1028, 1030 (Utah 1979). The first prong has been called the "formalities requirement," referring to the corporate formalities required by statute. *Messick v. PHD Trucking Serv., Inc.*, 678 P.2d 791, 794 (Utah 1984). The second prong has been called the "fairness requirement," and it "is addressed to the conscience of the court." *James Constructors*, 761 P.2d at 47 (internal quotation marks omitted). Under the second prong, "[i]t is not necessary that the plaintiff prove actual fraud, but must only show that failure to pierce the corporate veil would

result in an injustice." *Colman,* 743 P.2d at 786.

¶ 15 Generally, "[c]ourts must balance piercing and insulating policies and will only reluctantly and cautiously pierce the corporate veil." *James Constructors,* 761 P.2d at 46. Ultimately, the decision to pierce the corporate veil is a highly factual determination, and each case should be determined on its particular facts. *See, e.g., Norman,* 596 P.2d at 1032 ("This Court has reiterated that it is the particular circumstances of the case that determine whether the application of the alter ego doctrine is appropriate.").

¶ 16 Subsequent to our opinion in *Norman,* the Utah Court of Appeals articulated a set of eight factors to be considered in determining whether a court should pierce the corporate veil. *See Colman,* 743 P.2d at 786. These factors include whether there was

(1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Id.* (footnotes omitted).[3]

¶ 17 While we have never expressly adopted the *Colman* factors, they generally mirror the factors adopted by other courts. *See, e.g., Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal,* 516 F.3d 719, 731 (8th Cir.2008) (considering similar factors);

*Mackey v. Burke,* 751 F.2d 322, 326–27 (10th Cir.1984) (upholding a Kansas district court jury instruction to consider these same eight factors). Courts have considered a wide variety of factors in determining whether to pierce the corporate veil. *See* 114 AM.JUR.3D. *Proof of Facts* 403, § 10 (2010) (listing twenty different factors that courts have considered in determining whether to pierce the corporate veil). This suggests that, while helpful, the *Colman* factors should be viewed as non-exclusive considerations and not dispositive elements. Indeed, even the *Colman* court noted that the factors, while significant, were "not conclusive[ ] in determining whether [the alter ego] test has been met." *Colman,* 743 P.2d at 786.[4]

¶ 18 We adopt the *Colman* factors as useful considerations to aid courts in determining whether to pierce the corporate veil. We emphasize, however, that they are merely helpful tools and not required elements. Indeed, "factors adopted as significant in a particular decision to disregard the corporate entity should be treated as guidelines and not as a conclusive test." 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF CORPORATIONS § 41.30 (2006). Rather, "a careful review of the entire relationship between various corporate entities and their directors and officers" is necessary. *Id.* § 41.10. Thus, each alter ego case should be determined based on its individual facts by evaluating the entire relationship between the corporation and its shareholders.

¶ 19 Since the court of appeals' articulation of the *Colman* factors, there appears to have been some confusion in their application to the two elements of *Norman's* alter ego test.

---

**3.** The *Colman* court further elaborated on the second factor, noting that the "[f]ailure to observe corporate formalities includes such activities as commencement of business without the issuance of shares, lack of shareholders' or directors' meetings, lack of signing of consents, and the making of decisions by shareholders as if they were partners." 743 P.2d at 786 n. 2. The court also elaborated on the seventh factor. In determining whether a corporation has been used as a facade for a dominant shareholder, a court may evaluate the "[f]ailure to distinguish between corporate and personal property, the use of corporate funds to pay personal expenses without proper accounting, and failure to maintain complete corporate and financial records." *Id.* at 786 n. 3. The *Colman* court noted that these things are generally "looked upon with extreme disfavor." *Id.*

**4.** While the *Colman* factors initially were adopted as a set of non-conclusive considerations in determining whether a party had provided a sufficient basis to pierce the corporate veil, it appears that many courts have relied exclusively on these factors, often foregoing consideration of other relevant facts. *See, e.g., Jones & Trevor Mktg., Inc. v. Lowry,* 2010 UT App 113, ¶¶ 5–10, 233 P.3d 538.

In *Colman,* the court of appeals suggested that the factors applied generally to the two-part test we articulated in *Norman,* and not specifically to either of its elements. *Colman,* 743 P.2d at 786 (stating that these factors were "deemed significant, although not conclusive, in determining whether this test has been met"). Later, the court of appeals stated that "[t]he first seven of the eight factors set forth in *Colman* are relevant to the [first] question of whether a corporation is the alter ego of one or a few individuals." *DeGrazio v. Legal Title Co.,* 2006 UT App 183U, para. 3, 2006 WL 1174237. But that same year, the court of appeals stated that the eight factors were all "consider[ed] under the first [formalities] prong" of the alter ego test. *d'Elia v. Rice Dev., Inc.,* 2006 UT App 416, ¶ 30, 147 P.3d 515.

¶ 20 We clarify that the first seven *Colman* factors are relevant to the formalities element of the *Norman* test, while the eighth factor merely reiterates the fairness element of the *Norman* test. The eighth *Colman* factor analyzes "the use of the corporate entity in promoting injustice or fraud." *Colman,* 743 P.2d at 786. This factor is essentially identical to the fairness element of the *Norman* test, which evaluates whether "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." 596 P.2d at 1030. Therefore, the eighth *Colman* factor appears superfluous. Indeed, there are no established factors to be considered in evaluating the fairness element because it is simply an appeal to the conscience of the court and the court's equitable powers.[5] *See Messick,* 678 P.2d at 794.[6]

¶ 21 In summary, we adopt the *Colman* factors with the caveat that they are, as the *Colman* court acknowledged, only non-exclusive considerations. Furthermore, we clarify that the first seven *Colman* factors relate to the formalities element of the alter ego test, while the eighth *Colman* factor is merely a restatement of the fairness element.

## II. A PLAINTIFF NEED NOT ESTABLISH A SET NUMBER OF *COLMAN* FACTORS TO AVOID SUMMARY JUDGMENT OR PREVAIL ON AN ALTER EGO THEORY

■ ¶ 22 Having adopted the *Colman* factors, we next address whether a party must produce evidence of more than one *Colman* factor to survive a motion for summary judgment. The court of appeals held that J & T Marketing provided evidence of only one *Colman* factor, and that one factor, standing alone, was insufficient to preclude summary judgment because "[w]ithout any evidence of the other alter ego factors, [the court could not] gauge the materiality of the one factor on which evidence was presented." *Jones & Trevor Mktg., Inc. v. Lowry,* 2010 UT App 113, ¶ 10, 233 P.3d 538. J & T Marketing argues that the court of appeals erred because "evidence of [even] one factor, in appropriate circumstances, may be sufficient to preclude summary judgment."[7] We agree with J & T Marketing.

■ ¶ 23 As previously discussed, the *Colman* factors are merely helpful guidelines; they are not required elements. *See supra* ¶¶ 18–21. While a final decision to pierce the corporate veil may often rest on a finding of several factors, the issue on summary judgment is not how many factors a

5. In this case, both parties agree that the district court would act as the trier of fact for J & T Marketing's alter ego theory because the theory appeals to the court's equitable powers.

6. We emphasize that even though there are no factors to analyze under the fairness prong, this does not give courts "carte blanche" permission to pierce the corporate veil. *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.,* 789 P.2d 24, 26 (Utah 1990). A party attempting to prevail on an alter ego theory must still appeal to the court's equitable powers and articulate how "the observance of the corporate form would

sanction a fraud, promote injustice, or an inequitable result would follow." *Norman,* 596 P.2d at 1030.

7. J & T Marketing argues that it provided evidence on at least four of the *Colman* factors: the facade factor, the siphoning factor, the promotion of injustice or fraud factor, and the undercapitalization factor. Because we decide that there is no specific requirement of how many factors a party must establish, we need not consider how many factors J & T Marketing articulated in opposing Lowry and Kinsella's motion for summary judgment.

party has established. Rather, the crucial issue on a motion for summary judgment is whether there are any genuine issues of material fact that would preclude judgment in favor of the moving party. *See* UTAH R. CIV. P. 56(c). Where a party moves for summary judgment in an alter ego case, the court must evaluate the entire relationship between the corporation and its officers and ask whether there are disputed facts relevant to *Norman*'s two-part test for piercing the corporate veil. *See supra* ¶¶ 18–20.

■■■ ¶ 24 Under this framework, it is possible that evidence of even one of the *Colman* factors may be sufficient to suggest both elements of a party's alter ego theory and therefore preclude summary judgment. Even the *Colman* court seemed to contemplate that a strong showing on one factor could satisfy both prongs of the *Norman* test. *See Colman v. Colman*, 743 P.2d 782, 786 n. 3 (Utah Ct.App.1987) (noting that under the seventh facade factor, the "[f]ailure to distinguish between corporate and personal property, the use of corporate funds to pay personal expenses without proper accounting, and failure to maintain complete corporate and financial records are looked upon with extreme disfavor"). Moreover, the *Colman* factors are non-exclusive. Therefore, there is no specific formula for how many factors a party must establish. Rather, the court must evaluate the entire relationship between the corporation and its officers and ask whether there are disputed facts that would preclude summary judgment.

## III. THERE ARE NO GENUINE DISPUTES OF MATERIAL FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT ON J & T MARKETING'S ALTER EGO THEORY

■■■ ¶ 25 We now examine whether there are any genuine disputes of material fact in this case that would preclude summary judgment in favor of Lowry and Kinsella. Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c). To survive a motion for summary judgment on

an alter ego theory, the party alleging alter ego liability must present evidence creating a genuine issue of disputed material fact with respect to both elements of the *Norman* alter ego test. This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■■■ ¶ 26 J & T Marketing asserts that it raised genuine issues of material fact regarding Lowry and Kinsella's personal use of corporate funds and that these issues, when viewed in the light most favorable to J & T Marketing, preclude summary judgment. Lowry and Kinsella counter that summary judgment was proper because the evidence produced by J & T Marketing is simply insufficient, even if taken as true, to satisfy the test for piercing the corporate veil. The court of appeals agreed with Lowry and Kinsella, holding that "[t]he evidence properly of record showed that although Lowry and Kinsella took money from FDS when it was struggling to meet its other financial obligations, the money was accounted for, and no evidence was produced that this accounting was done improperly." *Jones & Trevor Mktg. v. Lowry*, 2010 UT App 113, ¶ 9, 233 P.3d 538 (footnote omitted).

¶ 27 We agree with the court of appeals on this point. A mere showing that corporate shareholders took money from a company is insufficient to preclude summary judgment on an alter ego theory. There are many legitimate reasons why shareholders might draw funds from corporate accounts. Examples include paying their own salaries or bonuses, loans, or dividends. Thus, merely demonstrating that shareholders withdrew funds from corporate accounts is an insufficient basis on which to pierce the corporate veil absent additional evidence that the withdrawals were not legitimate or that the company failed to properly account for the withdrawals.

¶ 28 In this case, the parties have come forward with only scant evidence regarding the accounting of FDS's and Esbex's corporate accounts. At oral argument, J & T

Marketing asserted that it was the defendants' burden to establish that the companies properly accounted for the disbursements. In contrast, Lowry and Kinsella contend that it is the burden of J & T Marketing to prove that the companies failed to properly account for the withdrawals. In other words, the parties dispute which of them bears the burden of coming forward with such evidence.

¶ 29 Under rule 56 of the Utah Rules of Civil Procedure, the burden of proof shifts between the party moving for summary judgment and the nonmoving party. *Orvis v. Johnson,* 2008 UT 2, ¶ 10, 177 P.3d 600. Generally, the party moving for summary judgment must make an initial showing that he is entitled to judgment and that there is no genuine issue of material fact that would preclude summary judgment in his favor. *Id.* If he does so, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact or a deficiency with the moving party's legal theory that would preclude summary judgment. *Id.*

¶ 30 The determination of which party must come forward with evidence proving that there is a genuine material dispute of fact depends on which party bears the burden of proof on the underlying legal theory or claim that is the subject of the summary judgment motion. *Id.* ¶ 18. Where, as here, the nonmoving party will bear the burden of proving the underlying legal theory at trial, the moving party may satisfy its initial burden on summary judgment by showing that " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any [show] that there is no genuine issue of material fact.' " *Id.* (quoting UTAH R. CIV. P. 56(c)). "Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who 'may not rest upon the mere allegations or denials of the pleadings,' but 'must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting UTAH R. CIV. P. 56(e)).[8] A nonmoving party who bears the burden of proving the underlying claim or theory at trial "cannot rest on her allegations alone, particularly when the parties had an opportunity to conduct discovery." *Gerbich v. Numed Inc.,* 1999 UT 37, ¶ 12, 977 P.2d 1205.[9] This shifting burden is crucial in this case because, despite three years of extensive discovery, there is no affirmative evidence in the record demonstrating that FDS and Esbex failed to properly account for Lowry and Kinsella's withdrawals from the companies.

¶ 31 A party alleging liability based on an alter ego theory bears the burden of proof on that theory at trial. 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF CORPORATIONS § 41.28 (2006) (noting that "the burden of proof [is] on the party seeking to have the court apply the exception to the general rule and disregard the corporate entity"). Because J & T Marketing bears the burden of proving its alter ego theory at trial, J & T Marketing also bears the burden of demonstrating that the corporate funds were not properly accounted for.[10] J & T Marketing has not met this burden.

---

8. In contrast, "[w]here the moving party would bear the burden of proof at trial," such as where a defendant moving for summary judgment relies on an affirmative defense, "the movant must establish [evidence supporting] each element of his claim in order to show that he is entitled to judgment as a matter of law." *Orvis,* 2008 UT 2, ¶ 10, 177 P.3d 600. After the movant has made this initial showing, "[t]he burden ... then shifts to the nonmoving party to identify contested material facts[ ] or legal flaws" that would preclude entry of summary judgment. *Id.*

9. While this standard is similar to the federal standard adopted by the U.S. Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. at 322–27, 106 S.Ct. 2548, our prior cases have explicitly distinguished *Celotex. See Orvis,* 2008 UT 2, ¶¶ 15–16, 177 P.3d 600. While we have not adopted *Celotex* in its entirety, there are significant portions of our jurisprudence that are entirely consistent with *Celotex.* This includes our summary judgment jurisprudence regarding burden shifting. *Compare id.* ¶ 18, *with Celotex,* 477 U.S. at 322–27, 106 S.Ct. 2548. We have previously disavowed *Celotex* only to the extent that it suggests that a party can seek summary judgment without conducting discovery and citing to sufficient evidence to support its motion. *See Orvis,* 2008 UT 2, ¶ 16, 177 P.3d 600.

10. J & T Marketing has not argued that Lowry and Kinsella failed to meet their initial burden as the parties moving for summary judgment. Instead, the only dispute is whether J & T Market-

¶ 32 J & T Marketing claims that it presented evidence of the companies' lack of accounting, citing to a deposition of the companies' chief financial officer, John Neubauer. According to J & T Marketing, Neubauer's deposition testimony "presented evidence that Lowry and Kinsella took thousands of dollars of company proceeds for personal use, such as hunting trips, without proper documentation or accounting" and that "Lowry and Kinsella took money from [FDS] and [Esbex] . . . to fund their personal interests, without proper accounting and in disregard of the money needed to run the corporations." But the deposition testimony does not support these allegations.

¶ 33 While the deposition testimony indicates that Lowry and Kinsella made disbursements from the companies, it does not suggest that the companies failed to properly account for these withdrawals. In fact, Mr. Neubauer testified that he kept financial records and prepared weekly reconciliation reports for FDS and Esbex. And when explicitly asked about the accounting of the disputed funds, Mr. Neubauer testified, "However I would have been instructed to account for [the money taken by Lowry and Kinsella] is how I would have accounted for it." [11]

¶ 34 Despite three years of discovery, J & T Marketing never requested copies of the companies' financial records, bank statements, or reconciliation reports. And J & T Marketing never filed a rule 56(f) motion to request additional time for discovery. The burden was on J & T Marketing, as the party bearing the burden of proof at trial on its alter ego theory, to come forward with affirmative evidence showing a genuine issue of material disputed fact. Because J & T Marketing failed to affirmatively demonstrate a lack of proper accounting, we hold that sum-

mary judgment was proper, and we affirm the district court's summary judgment order in favor of Lowry and Kinsella.

## CONCLUSION

¶ 35 We adopt the first seven *Colman* factors as a set of non-exclusive considerations to aid courts in determining whether parties have met the formalities element of the alter ego test. And we hold that parties need not prove a certain number of *Colman* factors. Rather, courts should evaluate the entire relationship between a corporation and its officers in determining whether to pierce the corporate veil. Applying these principles to this case, we hold that J & T Marketing failed to provide affirmative evidence establishing a genuine material dispute on its alter ego theory. Therefore, we affirm the grant of summary judgment in favor of Lowry and Kinsella.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice LEE joined.

---

ing has affirmatively "set forth specific facts showing that there is a genuine issue for trial." Because J & T Marketing has not contested Lowry and Kinsella's initial showing, we focus only on whether J & T Marketing has met its burden of providing affirmative evidence on both elements of its alter ego theory.

11. The Court of Appeals improperly disregarded portions of Mr. Neubauer's deposition because "some of the evidence referred to in J & T's brief derives solely from Neubauer's stricken bank-

ruptcy deposition testimony." *Jones & Trevor Mktg.*, 2010 UT App 113, ¶ 9 n. 6, 233 P.3d 538. However, Mr. Neubauer was deposed twice. J & T Marketing cites exclusively to the deposition properly in the record and not the stricken bankruptcy petition. Therefore, we have fully considered this evidence but still conclude that J & T Marketing has not come forward with sufficient evidence to demonstrate a genuine issue of material disputed fact.