**2023 UT App 37**

# THE UTAH COURT OF APPEALS

COMMERCIAL CLUB BUILDING LLC,
Appellee and Cross-appellant,

*v.*

GLOBAL RESCUE LLC AND GR DIRECT LLC,
Appellants and Cross-appellees.

Opinion
No. 20200747-CA
Filed April 13, 2023

Third District Court, Salt Lake Department
The Honorable Laura Scott
No. 170903867

William B. Ingram and Scarlet R. Smith, Attorneys
for Appellants and Cross-appellees

Matthew N. Evans, Matthew M. Cannon, and
Whitney Hulet Krogue, Attorneys for Appellee and
Cross-appellant

JUSTICE DIANA HAGEN authored this Opinion, in which
JUDGE DAVID N. MORTENSEN and JUSTICE JILL M. POHLMAN
concurred.[1]

HAGEN, Justice:

¶1 Global Rescue LLC created a wholly owned subsidiary, GR Direct LLC, to sell memberships for Global Rescue's emergency travel services. GR Direct entered into a lease agreement for office space with Commercial Club Building LLC. After Global Rescue

---

1. Justice Diana Hagen and Justice Jill M. Pohlman began their work on this case as members of the Utah Court of Appeals. They each became members of the Utah Supreme Court thereafter and completed their work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4).

stopped funding GR Direct, it went out of business and stopped paying rent under the lease agreement.

¶2 Commercial Club sued both GR Direct and Global Rescue. After obtaining a default judgment against GR Direct, Commercial Club proceeded to trial against Global Rescue, pressing direct claims and seeking to hold Global Rescue liable for GR Direct's breach of the lease agreement under theories of joint venture and alter ego. A jury found Global Rescue liable under both theories. The jury awarded full damages under the lease, rejecting Global Rescue's defense that Commercial Club had failed to mitigate its damages. The jury also found that the transfer of GR Direct's assets to Global Rescue was voidable as a constructive fraudulent transfer and that Global Rescue tortiously interfered with the lease agreement.

¶3 Global Rescue moved for judgment notwithstanding the verdict (JNOV). The district court granted the motion in part, vacating the jury's verdict on the tortious interference claim, but otherwise denied the motion. The district court later awarded Commercial Club the attorney fees it incurred in obtaining a default judgment against GR Direct and defeating Global Rescue's mitigation defense. On appeal, Global Rescue challenges the district court's partial denial of its JNOV motion. Global Rescue also challenges the court's determination that it would be inequitable if the court did not find that GR Direct was the alter ego of Global Rescue.

¶4 We agree with Global Rescue that the jury's finding of a joint venture cannot stand because there was no evidence that Global Rescue and GR Direct exercised mutual control over a separate business endeavor distinct from GR Direct itself. We also vacate the district court's alter ego determination and remand for further findings because the basis for the court's finding that an inequitable result would occur is not clear on the record.

¶5    For its part, Commercial Club challenges the district court's grant of JNOV in favor of Global Rescue on the tortious interference claim. Because we conclude that Commercial Club has not carried its burden of persuasion on cross-appeal, we affirm.

BACKGROUND[2]

*The Parties*

¶6    Global Rescue is a company that provides medical, security, travel risk, crisis management, and telemedicine services "that individuals might need when they're traveling." Global Rescue is headquartered in Lebanon, New Hampshire. In 2015, an employee of Global Rescue, Douglas Robinson, pitched an idea to the CEO, Dan Richards, about creating a multilevel marketing company to sell Global Rescue products and services through memberships. Richards liked the idea and "made the decision to form GR Direct" as a wholly owned subsidiary of Global Rescue to "manage the organization and creation of the network marketing business." Robinson became the president of GR Direct.

¶7    Global Rescue funded GR Direct's services in addition to its overhead, marketing, and employee salaries. GR Direct opened its office in Salt Lake City, Utah, and entered into a three-year lease agreement with Commercial Club. Robinson signed the

---

2. "[O]n appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *Mueller v. Allen*, 2005 UT App 477, ¶ 2, 128 P.3d 18 (cleaned up). "We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346.

lease agreement on behalf of GR Direct, which was listed as the tenant.

¶8 About a year later, Global Rescue stopped funding GR Direct, and GR Direct went out of business. GR Direct defaulted on its lease, it abandoned the leased premises, and GR Direct's remaining monetary and physical assets went to Global Rescue.

*The Lawsuit*

¶9 Commercial Club subsequently filed a lawsuit against GR Direct and Global Rescue alleging six causes of action. Claim 1 was a breach of contract claim against GR Direct for failure to pay the rent due under the lease agreement. Claims 2 and 6 sought to hold Global Rescue liable for GR Direct's breach of the lease agreement under theories of alter ego or joint venture, respectively.

¶10 Claims 3 and 4 sought to void the transfer of GR Direct's assets to Global Rescue pursuant to the Uniform Voidable Transactions Act (UVTA), Utah Code §§ 25-6-101 to -502, which makes certain transfers by a debtor voidable as to a creditor. Subsection 25-6-202(1) identifies two types of voidable transfers: (a) transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor" (also known as intentionally fraudulent transfers), and (b) transfers made "without receiving a reasonably equivalent value in exchange for the transfer or obligation," leaving the debtor essentially insolvent (also known as constructively fraudulent transfers). Commercial Club alleged both types of voidable transfers as separate causes of action.

¶11 Finally, Claim 5 alleged that Global Rescue had tortiously interfered with the lease agreement between Commercial Club and GR Direct. Specifically, Commercial Club asserted that Global Rescue "intentionally interfered with the contract by, among other things, removing assets from [GR Direct] so that [it could not] make lease payments, making the decision to close the office

in Salt Lake City, refusing to pay amounts due and owing under contract as represented to [Commercial Club] and leaving [GR Direct] as a shell with little or no assets to pay the lease amounts."

¶12   GR Direct did not answer the complaint, and Commercial Club received a default judgment on Claim 1. The default judgment awarded Commercial Club the amounts owed under the lease agreement and allowed Commercial Club to "augment [the judgment] to include continuing monthly rent and other amounts owing under the Lease Agreement until such time as a suitable replacement tenant is located." The order also awarded Commercial Club its attorney fees and costs incurred in bringing the action against GR Direct, "as provided for in" the lease agreement, and allowed the judgment to be "augmented in the amount of reasonable attorneys' fees and costs incurred in collecting" the judgment.

¶13   After default judgment was entered against GR Direct, Commercial Club continued to pursue its claims against Global Rescue.

*Pre-Trial Motions*

¶14   Early on in this litigation, Global Rescue filed multiple motions for partial summary judgment. Relevant to this appeal, Global Rescue sought summary judgment on the tortious interference claim, arguing that, as a matter of law, the conduct alleged by Commercial Club did not constitute "improper means." The district court granted the motion in part and denied it in part. The court first identified the improper means alleged by Commercial Club to support its claim for tortious interference:

> (1) Removing assets from [GR Direct] so that it could not make lease payments; (2) making the decision to close the Salt Lake City office; (3) refusing to pay amounts due and owing under the lease agreement; (4) leaving [GR Direct] as a "shell" with little or no

assets; (5) engaging in "theft" of [GR Direct's] assets, including its intellectual property, income/revenue, and personal property; (7) converting these assets; and (8) fraudulently transferring these assets to Global Rescue.[3]

¶15 The court granted the motion with respect to alleged improper means 2, 3, 5, and 7, and that ruling has not been challenged on appeal. The court characterized the remaining allegations—improper means 1, 4, and 8—as the "alleged improper means of fraudulent transfer," which Commercial Club had alleged in Claims 3 and 4 as the basis for voiding the transfer of GR Direct's assets to Global Rescue. The court ruled that "a fraudulent transfer based on 'actual intent to hinder, delay, or defraud any creditor' (Utah Code Ann. § 25-6-202(1)(a)) [as alleged in Claim 3], if proven, may constitute an improper means for a tortious interference claim because it involves conduct similar to deceit or misrepresentations." On the other hand, "a fraudulent transfer under Utah Code Ann. § 25-6-202(1)(b) [as alleged in Claim 4] would not constitute improper means because there is nothing 'independently tortious or wrongful' about a company transferring assets for less than 'reasonably equivalent value.'" Therefore, the court concluded that if Commercial Club "proves that [GR Direct's] intellectual property, income/revenue, and/or personal property was transferred to Global Rescue with the actual intent to hinder, delay, or defraud [Commercial Club as alleged in Claim 3], it may constitute the improper means" element of tortious interference.

*Trial*

¶16 The case proceeded to a six-day jury trial. At the end of the trial, the jury found that Global Rescue and GR Direct engaged in a joint venture as alleged in Claim 6 and accordingly found Global

---

3. The number six was omitted in the order.

Rescue responsible for all amounts owed under the lease agreement as a result of GR Direct's breach. The jury also determined that Commercial Club did not fail to mitigate its damages, and that none of the damages awarded to Commercial Club for the breach should be reduced. With respect to Commercial Club's voidable transfer claims, the jury found that GR Direct's transfer of its assets to Global Rescue was voidable as a constructive fraudulent transfer as alleged in Claim 4, but that Commercial Club had not proven intentional fraudulent transfer as alleged in Claim 3. The jury also found for Commercial Club on its claim of tortious interference (Claim 5) and granted compensatory damages for the amounts due under the lease as well as punitive damages.

¶17   As to the alter ego claim (Claim 2), the jury was provided with a special verdict form that asked it to make findings on the first prong of the alter-ego test known as the "formalities requirement," leaving the second prong, referred to as the "fairness requirement," to the court. *See Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 14, 284 P.3d 360 (discussing the two requirements and explaining that the second prong "is addressed to the conscience of the court" (cleaned up)). The jury made the following findings that weighed in favor of alter ego: GR Direct was undercapitalized, Global Rescue siphoned GR Direct's funds, GR Direct did not have separate corporate records, Global Rescue used GR Direct as a "façade" for its own operations, and "there was such a unity of interest and ownership between Global Rescue and GR Direct that the separate personalities of the two no longer existed." The jury also made the following findings that weighed against alter ego: GR Direct did not fail to observe corporate formalities and had its own functioning officers and directors other than those employed by Global Rescue.

¶18   After trial, the district court addressed the alter ego claim and the jury's findings with respect to the first prong. The court reiterated the jury's findings and explained on the record the

evidence that supported those findings. When turning to the second prong and determining whether the "observation of the corporate form would sanction a fraud, promote injustice or an inequit[able] result would follow" the court found "no evidence of fraud." The court continued,

> Nevertheless, I do find that second element is met because under these circumstances and considering all the facts and testimony and other evidence at trial, I do find it would promote an injustice or an inequitable result would follow . . . if I were to recognize that separate corporate existence[].

The court therefore found in favor of Commercial Club on its alter ego claim.

*Post-Trial Motions*

¶19 After trial, Global Rescue filed two motions for JNOV that are relevant to this appeal.

¶20 First, Global Rescue moved to vacate the jury's finding of joint venture, arguing that it was entitled to judgment as a matter of law. Among other things, Global Rescue asserted that "the jury's verdict must be set aside because a joint venture/partnership requires a combination of two or more persons." Global Rescue cited "black-letter law that a joint venture or partnership requires 'two or more persons'" and argued that there was no evidence to support a finding that Global Rescue and GR Direct were "*separate* entities [that] combined their resources and had a joint proprietary interest in the sale of Global Rescue memberships, a mutual right to control GR Direct's business, a right to share in the profits generated by the sales of Global Rescue's memberships, and a duty to share in the losses." The district court denied the motion.

¶21 Global Rescue also moved for JNOV with respect to the jury's tortious-interference verdict. Global Rescue argued that because the district court had previously determined that Commercial Club could establish the "improper means" element of tortious interference only if the jury found intentional fraudulent transfer, the tortious-interference verdict could not stand because the jury found only constructive fraudulent transfer. Commercial Club countered that constructive fraudulent transfer is sufficient to establish improper means and the jury verdict should not be vacated. The district court agreed with Global Rescue and vacated the tortious interference verdict. The court explained that its prior ruling "narrowed" the tortious interference claim to "intentional fraud" and that "it could not be constructive fraud." Because the jury did not find intentional fraud, the tortious interference claim failed.

¶22 For its part, Commercial Club sought attorney fees as the prevailing party under the lease agreement. The district court determined that, under the attorney fees provision in the lease, Commercial Club was entitled to recover only fees incurred in connection with obtaining the default judgment against GR Direct and in prevailing against Global Rescue's mitigation defense at trial. The court ruled that Global Rescue was jointly and severally liable for the attorney fees based on its "finding of joint venture/partnership liability."

¶23 Each party now appeals.

ISSUES AND STANDARDS OF REVIEW

¶24 Global Rescue first contends that the district court erred in denying its JNOV motion challenging the jury's joint venture verdict. We review the district court's decision on a JNOV motion for correctness. *See USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 34, 372 P.3d 629. A court may grant a JNOV motion "only if, after looking at the evidence and all reasonable inferences in a light

most favorable to the nonmoving party, the trial court concludes that there is no competent evidence which would support a verdict in the nonmoving party's favor." *Id.* (cleaned up).[4]

¶25 Global Rescue also contends that the district court erred in its equitable determination under the theory of alter ego and in "finding that not piercing the corporate veil would lead to an injustice." "[A] trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy, and it will not be overturned unless it has abused its discretion." *Ockey v. Lehmer*, 2008 UT 37, ¶ 42, 189 P.3d 51 (cleaned up). And because "a trial court is in an advantaged position to consider equities, we give considerable deference to its findings and judgment." *Smith v. Simas*, 2014 UT App 78, ¶ 10, 324 P.3d 667 (cleaned up).

¶26 On cross-appeal, Commercial Club argues that the district court erred in granting Global Rescue's JNOV motion and "setting aside the jury's verdict in favor of Commercial Club . . . on Commercial Club's claim for Intentional Interference with Contractual Relations."[5] We review the "entry of JNOV . . . for

---

4. Global Rescue also challenges a portion of the attorney fees award, arguing that the fees Commercial Club incurred in defeating Global Rescue's mitigation defense were unrelated to the enforcement of the lease agreement. We have no occasion to reach this issue given our conclusion that the evidence was insufficient to sustain the jury's joint venture verdict. Because Global Rescue was held jointly and severally liable for attorney fees based on "joint venture/partnership liability," we vacate the attorney fee award entirely as it relates to Global Rescue.

5. Commercial Club raises three other issues in its cross-appeal that we do not reach. First, Commercial Club argues that the district court erred in concluding that its "claim/remedy for joint-venture/partnership was not an action to 'enforce' any provisions

(continued…)

correctness," reversing only if we find that there is support for the jury's verdict. *Neff v. Neff*, 2011 UT 6, ¶ 49, 247 P.3d 380.

## ANALYSIS

### I. Global Rescue and GR Direct Did Not Create a Joint Venture.

¶27    Global Rescue argues that the district court erred in denying its motion to vacate the jury's joint venture verdict because there was no evidence of "a mutual right to control and any purported profits or losses were several, not joint." We agree that the evidence, viewed in the light most favorable to the jury's verdict, does not support the existence of a joint venture.

---

of the Lease Agreement" and therefore not covered by the lease's attorney fees provision. But Commercial Club acknowledges that Global Rescue can be held liable for attorney fees only under a joint venture theory. Because the evidence at trial was insufficient to establish a joint venture, we need not reach the proper interpretation of the lease's attorney fees provision. Second, Commercial Club argues that "if the jury's verdict for tortious interference is reinstated as to liability, the ju[r]y undoubtedly properly exercised its broad discretion to award punitive damages with that claim" and the vacated punitive damages should be reinstated. Because we affirm the district court's dismissal of the tortious interference claim, we do not reach this argument. Finally, Commercial Club has requested its attorney fees on appeal. "Ordinarily, we award appellate attorney fees and costs when a party was awarded fees and costs below and then prevails on appeal." *Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2019 UT App 47, ¶ 15 n.11, 440 P.3d 884 (cleaned up), *cert. denied*, 455 P.3d 1058 (Utah 2019). Commercial Club is not the prevailing party on appeal and is therefore not entitled to its attorney fees. *See id.*

¶28 "A joint venture is an agreement between two or more persons ordinarily but not necessarily limited to a single transaction for the purpose of making a profit." *Bassett v. Baker*, 530 P.2d 1, 2 (Utah 1974). To form a joint venture,

> [t]he parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be [1] a community of interest in the performance of the common purpose, [2] a joint proprietary interest in the subject matter, [3] a mutual right to control, [4] a right to share in the profits, and [5] unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

*Ellsworth Paulsen Constr. Co. v. 51-SPR-LLC*, 2008 UT 28, ¶ 15, 183 P.3d 248 (brackets in original) (cleaned up). "Whether a joint venture exists is ordinarily a question of fact," and we must "therefore look at the facts of the case and determine whether there is evidence to support each of the five elements of a joint venture." *Id.* (cleaned up).

¶29 Those five elements presuppose "an agreement between two or more persons" to engage in a separate business endeavor. *See Bassett*, 530 P.2d at 2. In other words, at least two persons— person A and person B—must agree to jointly undertake venture C. The joint venture itself cannot be one of the two or more persons to the agreement.

¶30 The difficulty with this case is that we do not seem to have two distinct persons who entered into an alleged joint venture. Instead, it appears that GR Direct was created by Global Rescue as its wholly owned subsidiary for the sole purpose of selling Global Rescue memberships. If GR Direct did not independently

exist, we question how it could have agreed with Global Rescue to form itself.[6]

¶31 But that is not the way Global Rescue has presented the case on appeal. Instead of arguing that the joint venture claim fails for want of "two or more persons," Global Rescue argues that there was no evidence of a mutual right to control the alleged joint venture.[7] In analyzing the mutual control element, both parties treat GR Direct as the other person who allegedly entered into a joint venture with Global Rescue. The joint venture claim was presented the same way at trial, where the jury was asked to find if "Global Rescue and GR Direct engage[d] in a joint venture or partnership."

¶32 Although we question whether the "two or more persons" requirement was satisfied in this case, we will assume for purposes of our analysis that Global Rescue and GR Direct are the alleged joint venturers. But if we make that assumption, it requires us to define the joint venture as something other than GR Direct itself. We must then determine whether there was sufficient evidence to support the jury's findings that Global

---

6. There is no evidence in the record to suggest that Robinson was the second person who entered into an agreement with Global Rescue to create GR Direct. Instead, the evidence shows that Robinson, as an employee of Global Rescue, had the idea to create a multi-level marketing company to sell Global Rescue subscriptions and that Richards then organized a limited liability company, GR Direct, to sell the subscriptions while shielding Global Rescue from liability.

7. Global Rescue also argues that there was no right to share in profits or duty to share in losses. Because there is no evidence to support the mutual control element, we do not reach those additional arguments.

Rescue and GR Direct exercised mutual control over that separate joint venture.

¶33    Commercial Club contends that Global Rescue and GR Direct created a "new joint venture" as "a joint effort with a mutual right to control, with each side bringing their respective resources to the table for the joint venture." Under this theory of the case, Global Rescue's contribution to the alleged joint venture appears to have been the product—telemedicine memberships—while GR Direct's contribution was "creating a multilevel marketing company to sell Global Rescue product." But instead of defining the joint venture as a separate business endeavor, Commercial Club defines the joint venture as the "operations of GR Direct."

¶34    Indeed, both parties have struggled to identify the distinct joint venture over which Global Rescue and GR Direct would need to exercise mutual control. In its opening brief, Global Rescue correctly states that the parties must have mutual control over the "joint venture" but then argues that GR Direct had no mutual control over *Global Rescue*, as if Global Rescue is the alleged joint venture, rather than an alleged joint venturer.

¶35    In response, Commercial Club correctly points out that joint venturers must exercise mutual control over the joint venture—not each other—but then equates GR Direct with the joint venture:

> Global Rescue misses the mark when it argues that "[a]lthough Global Rescue had the right to control GR Direct, GR Direct had no voice in Global Rescue's business operations." This argument ignores the critical fact that *the joint venture was the operations of GR Direct*, not the general operations of Global Rescue. The question is whether or not there was a mutual right to control with respect to the venture—*the MLM business at GR Direct*—not if GR

> Direct could also assert control over Global Rescue's other business operations.

(Emphasis added.) Commercial Club argues that "there was extensive evidence presented at trial demonstrating that along with Global Rescue, GR Direct had a mutual right to control the operations of GR Direct—the joint venture."

¶36   In reply, Global Rescue identifies the "sale of telemedicine services" as the alleged joint venture. It argues that "GR Direct's limited control to manage its own day-to-day operations does nothing to demonstrate a mutual right to control the sale of memberships for telemedicine services."

¶37   However one defines the alleged joint venture, it must be something other than either of the two alleged joint venturers. Yet in support of the jury's finding of mutual control, Commercial Club relies solely on evidence that "GR Direct had a mutual right to control the operations of GR Direct." Specifically, Commercial Club points to evidence that GR Direct handled matters related to its lease, hired and fired GR Direct employees, maintained its own bank accounts, built GR Direct's "compensation plan/wealth plan," created its own marketing strategies, "was running the entire [multilevel marketing] program," and was "doing everything related to network marketing." All that evidence relates to the control GR Direct exercised over its own multilevel marketing operations. None of that evidence suggests that GR Direct exercised control over a separate joint venture.

¶38   The lack of evidence showing mutual control over a separate joint venture is fatal to Commercial Club's joint venture claim. It also underscores why a joint venture theory is ill-fitted to the facts of this case. Global Rescue and GR Direct did not undertake a joint venture separate from GR Direct. Instead, Global Rescue created a wholly owned subsidiary to sell Global Rescue's telemedicine memberships through multilevel

marketing. As Global Rescue puts it, "GR Direct was merely Global Rescue's instrument for its own benefit."

¶39    In concluding that the jury's verdict cannot stand, we do not hold that a parent company and a subsidiary are incapable of creating a joint venture. *See, e.g.*, *Wirth v. Sun Healthcare Group, Inc.*, 2017-NMCA-007, ¶ 33, 389 P.3d 295 (recognizing that "it is at least conceivable that a parent may share a business venture with its subsidiary"); *Kissun v. Humana, Inc.*, 479 S.E.2d 751, 752 (Ga. 1997) ("[T]he parent/subsidiary relationship alone does not, as a matter of law, preclude such corporations from establishing the legal relationships of principal and apparent agent or joint venturers . . . ."). But the joint venture of a parent corporation and a subsidiary corporation must be distinct from the subsidiary itself. *Cf. Hanback v. GGNSC Southaven, LLC*, No. 3:13-CV-00288-MPM-SAA, 2014 WL 3530613, at *5 (N.D. Miss. July 15, 2014) ("[I]f the capture of upstream profits constitutes a joint venture, then nearly all formally organized . . . parent/holding companies would be considered part of a joint venture . . . .").

¶40    Here, GR Direct was not a subsidiary that agreed with its parent corporation to undertake a separate business venture. And without evidence of a separate venture, Commercial Club could not prove that Global Rescue and GR Direct exercised mutual control over such a venture. Accordingly, we reverse the jury's joint-venture verdict and vacate the court's judgment in favor of Commercial Club on Claim 6. Commercial Club cannot hold Global Rescue liable for GR Direct's default unless it prevails on its alter ego claim (Claim 2). *See infra* Section II.

¶41    We must also vacate the portion of the attorney fees award finding Global Rescue jointly and severally liable for attorney fees under the lease agreement between Commercial Club and GR Direct. The district court based that finding solely on "joint venture/partnership liability." Because we hold that the evidence

was insufficient to prove a joint venture, Global Rescue cannot be liable for attorney fees under that theory.

## II. There Are Insufficient Findings of Fact to Support the District Court's Alter-Ego Determination.

¶42 Global Rescue next challenges the district court's alter-ego determination finding Global Rescue liable for GR Direct's breach of the lease agreement. Global Rescue is the sole shareholder of GR Direct. "Ordinarily a corporation is regarded as a legal entity, separate and apart from its stockholders." *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 13, 284 P.3d 630 (cleaned up). "The purpose of such separation is to insulate the stockholders from the liabilities of the corporation, thus limiting their liability to only the amount that the stockholders voluntarily put at risk." *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 46 (Utah Ct. App. 1988).

¶43 "The alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation." *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 13. "A party may pierce the corporate veil and obtain a judgment against the individual shareholders for a cause of action that arose from a dispute with the corporate entity if the plaintiff proves that the corporation is acting as an alter ego of its shareholders." *Simons v. Park City RV Resort, LLC*, 2015 UT App 168, ¶ 5, 354 P.3d 215 (cleaned up).

¶44 "Generally, courts must balance piercing and insulating policies and will only reluctantly and cautiously pierce the corporate veil." *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 15 (cleaned up). The decision to do so "is a highly factual determination, and each case should be determined on its particular facts." *Id.*; *see also Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1032 (Utah 1979) ("[I]t is the particular circumstances of the case that determine whether the application of the alter ego doctrine is appropriate."); *James Constructors, Inc.*, 761 P.2d at 47 ("A key

feature of the alter ego theory is that it is an equitable doctrine requiring that each case be determined upon its peculiar facts.").

¶45    In *Norman v. Murray First Thrift & Loan Co.,* 596 P.2d 1028 (Utah 1979), the Utah Supreme Court established a two-prong test to determine whether an alter ego exists to allow a party to pierce the corporate veil: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Id.* at 1030.

¶46    On appeal, Global Rescue challenges only the second prong, which is appropriately addressed by the district court and not the jury. *See Jones & Trevor Mktg.,* 2012 UT 39, ¶ 14 ("The second prong . . . is addressed to the conscience of the court." (cleaned up)). "Under the second prong, it is not necessary that the plaintiff prove actual fraud, but must only show that failure to pierce the corporate veil would result in an injustice." *Id.* (cleaned up).

¶47    "[T]here are no established factors to be considered in evaluating the fairness element because it is simply an appeal to the conscience of the court and the court's equitable powers." *Id.* ¶ 20. But the absence of any established factors to analyze under the fairness prong "does not give courts 'carte blanche' permission to pierce the corporate veil." *Id.* ¶ 20 n.6. "A party attempting to prevail on an alter ego theory must still appeal to the court's equitable powers and articulate how the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Id.* (cleaned up).

¶48    Here, the district court found that there was no "evidence of fraud in this case," but it determined that "under these circumstances and considering all the facts and testimony and other evidence at trial, . . . it would promote an injustice or an

inequitable result would follow . . . if [the court] were to recognize that separate corporate existence[]."

¶49   Global Rescue argues that the district court abused its discretion in finding that the fairness prong had been met under the circumstances of this case. Although the court discussed the various ways in which the relationship between Global Rescue and GR Direct might "have been misleading under certain circumstances," it ultimately concluded that it did not constitute "fraudulent conduct in any way." In addition, Global Rescue points to the district court's prior factual finding that, before executing the lease agreement, Commercial Club knew that Global Rescue and GR Direct were separate entities.[8] Because the court identified no other facts or circumstances to support its finding on the fairness prong, Global Rescue contends that the alter ego determination should be set aside.

¶50   Commercial Club defends the district court's equitable determination, arguing that it was reasoned and persuasive and "resulted in over six transcript pages" of findings. But for the most part, those findings relate to the formalities prong and not to the fairness prong challenged on appeal. The court cited specific evidence in support of its finding that there was no fraudulent conduct, but it did not identify the evidence at trial that supported its conclusion that "it would promote an injustice or an

---

8. Specifically, in granting Global Rescue's motion for summary judgment on Commercial Club's claim of joint venture by estoppel, the court found that "given the language in the Lease Agreement between [Commercial Club] and GR Direct, and [Commercial Club's] knowledge before executing the Lease Agreement that Global Rescue and GR Direct were separate entities, it was not reasonable as a matter of law for [Commercial Club] to rely on any alleged representations necessary for a finding of joint venture by estoppel."

inequitable result would follow" if the court did not allow Commercial Club to pierce the corporate veil.

¶51 It is not clear from this ruling what circumstances, facts, testimony, or other evidence presented at trial the court relied on in making this determination. And "without insight into the district court's reasoning, we are unable to ascertain whether the district court's decision follows logically from, and is supported by, the evidence." *Veracity Networks LLC v. MCG S. LLC*, 2019 UT App 53, ¶ 35, 440 P.3d 906 (cleaned up), *cert. denied*, 455 P.3d 1058 (Utah 2019). Where we cannot conduct meaningful appellate review of the district court's decision, we "may remand for the entry of more-detailed findings." *Id.* (cleaned up).

¶52 Here, the discretionary decision to pierce the corporate veil depends on the court's assessment of the facts presented at trial. But because we cannot ascertain the basis for the court's determination that failure to pierce the corporate veil would promote injustice or produce an inequitable result, we cannot properly evaluate whether the district court abused its discretion in finding Global Rescue liable as the alter ego of GR Direct. Therefore, we vacate the entry of judgment in favor of Commercial Club on Claim 2. We remand for the district court to make further findings on the fairness prong and enter an amended judgment in accordance with those findings.

### III. Commercial Club Has Not Carried Its Burden of Showing Any Error in the District Court's Entry of JNOV in Favor of Global Rescue on the Tortious Interference Claim.

¶53 On cross-appeal, Commercial Club contends that the district court erred in determining that constructive fraud did not satisfy the "improper means" element of tortious interference with contractual relations. Commercial Club therefore argues that the district court erred in entering JNOV in favor of Global Rescue on that claim. "JNOV is justified only if, after looking at the evidence and all reasonable inferences in a light most favorable to

the nonmoving party, the trial court concludes that there is no competent evidence which would support a verdict in that party's favor." *Neff v. Neff*, 2011 UT 6, ¶ 49, 247 P.3d 380 (cleaned up). Here, however, the district court's entry of JNOV rested on the court's earlier ruling that granted partial summary judgment on the tortious interference claim.

¶54    To succeed on a claim for tortious interference with contractual relations, the plaintiff must prove: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (cleaned up). Our supreme court has "defined improper means narrowly to include only those actions that are contrary to law, such as violations of statutes, regulations, or recognized common-law rules, or actions that violate an established standard of a trade or profession." *See C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 42, 437 P.3d 343 (cleaned up). And the court has offered "a non-exhaustive list of conduct that would constitute improper means: violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehoods." *Id.* (cleaned up). As the court explained, because "such acts are illegal or tortious in themselves they are clearly improper means of interferences." *Id.* (cleaned up).

¶55    Commercial Club argues that the improper means element was satisfied here because the jury found that the transfer of GR Direct's assets to Global Rescue was constructively fraudulent and therefore voidable under the UVTA. But in ruling on Global Rescue's motion for partial summary judgment, the court dismissed the tortious interference claim except to the extent it alleged, as the improper means, "a fraudulent transfer based on actual intent to hinder, delay, or defraud any creditor." The court reasoned that an intentional fraudulent transfer under Utah Code subsection 25-6-202(1)(a) "involves conduct similar to deceit and misrepresentation," which our supreme court has identified as

improper means.[9] Utah Code § 25-6-202(1)(a). On the other hand, the court ruled that a constructively fraudulent transfer under subsection (1)(b) "would not constitute improper means because there is nothing 'independently tortious or wrongful' about a company transferring assets for less than reasonably equivalent value." *See id.* § 25-6-202(1)(b).

¶56 The jury ultimately found that the transfer of GR Direct's assets to Global Rescue was voidable as a constructively fraudulent transfer but not as an intentional one. Consistent with the pre-trial ruling narrowing the tortious interference claim, the court granted Global Rescue's JNOV motion because the jury did not find an intentionally fraudulent transfer.

¶57 In its opening brief, Commercial Club does not cite or otherwise acknowledge the district court's pre-trial ruling that only an intentional fraudulent transfer—not a constructive fraudulent transfer—could satisfy the improper means element of tortious interference. Nor does Commercial Club cite the district court's oral ruling granting JNOV, in which the court expressly relied on its summary judgment ruling as the basis for setting aside the jury verdict finding tortious interference.

¶58 Global Rescue argues that by ignoring the district court's summary judgment ruling, Commercial Club has effectively limited the issue on appeal to whether the district court abused its discretion in declining to reconsider that ruling when Global Rescue moved for JNOV. Global Rescue relies on the law-of-the-case doctrine, which provides that "a decision made on an issue during one stage of a case is binding in successive stages of the

---

9. Because the jury did not find intentional fraudulent transfer, we have no occasion to review the district court's pre-trial ruling that a transfer by a debtor "with actual intent to hinder, delay, or defraud any creditor of the debtor" constitutes improper means for purposes of a tortious interference claim against the transferee.

same litigation." *IHC Health Services., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (cleaned up). Although the parties are bound by the prior decision, the court remains free to reconsider that decision so long as the case remains pending before the court prior to any appeal. *Id.* ¶ 27. "Whether to reconsider a prior ruling is ordinarily within the sound discretion of the district court . . . ." *Colony Ins. Co. v. Human Ensemble, LLC*, 2013 UT App 68, ¶ 6, 299 P.3d 1149. If the district court declines to reconsider a prior decision without reaching the merits, we will reverse only if the court has abused its discretion. *See Bergmann v. Bergmann*, 2018 UT App 130, ¶ 12, 428 P.3d 89. "Conversely, when a district court reaches the merits of a motion to reconsider and provides legal analysis and legal conclusions, we would reach the merits of its ruling." *Blueridge Homes Inc. v. Method Air Heating & Air Conditioning*, 2019 UT App 149, ¶ 20, 450 P.3d 114.

¶59   Here, the district court did not simply decline to reconsider the summary judgment ruling. Instead, it also ruled that it was "not persuaded that [its] ruling on the motion for summary judgment was incorrect; that the notion of improper means could be expanded to include [the] constructive fraudulent transfer claim." The court explained that the only evidence of improper means offered by Commercial Club was the transfer of office equipment from GR Direct to Global Rescue, which the jury found constituted a voidable transfer based on constructive fraud. The court concluded that there was nothing "independently tortious or wrongful about Global Rescue receiving the transfer of that asset" and therefore the evidence supporting the jury's verdict on constructive fraud was insufficient to prove improper means as a matter of law. Because the district court engaged with the issue on the merits, we cannot simply affirm the ruling as a discretionary refusal to reconsider a prior ruling.

¶60   But Commercial Club's failure to acknowledge the basis of the district court's ruling hinders our ability to review the merits of the decision. Under our rules of appellate procedure, the party

challenging the district court's decision must "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). To satisfy the burden of persuasion on appeal, "an appellant must provide reasoned analysis on how the district court erred." *Syme v. Symphony Group LLC*, 2018 UT App 212, ¶ 28, 437 P.3d 576 (cleaned up). Here, Commercial Club has not "engaged with the district court's reasoning" in granting Global Rescue's JNOV motion, which was premised on the court's earlier ruling granting partial summary judgment on the tortious interference claim. *See Dale K. Barker Co. PC CPA Profit Sharing Plan v. Turner*, 2021 UT App 119, ¶ 31, 500 P.3d 940. Because its arguments are not tethered to the district court's actual ruling, Commercial Club has not carried its burden to demonstrate that the district court erred in ruling, as a matter of law, that a constructive fraudulent transfer does not constitute improper means for purposes of a tortious interference claim.

¶61  Instead of engaging with the district court's reasoning, Commercial Club asks us to reinstate the jury's tortious interference verdict "because the jury determined 'by clear and convincing evidence' that Global Rescue engaged in a *constructive* fraudulent transfer, which satisfies the 'improper means' prong of a tortious interference claim under Utah law." Because the UVTA allows a creditor to void such a transfer, Commercial Club contends that Global Rescue "engaged in conduct 'in which the defendant did not have a legally recognized right to engage.'" (Quoting *C.R. England*, 2019 UT 8, ¶ 42.) But Commercial Club offers no authority to support the proposition that engaging in a voidable transfer is "independently wrongful or tortious conduct" that establishes not only a cause of action under the UVTA but also the improper means element of a tortious interference claim.

¶62  Even assuming that the conduct described in subsection (1)(b) constitutes "independently tortious or wrongful conduct,"

the jury's verdict voiding the transfer does not establish that Global Rescue used improper means to tortiously interfere with the lease contract. Whether a transfer is voidable under subsection (1)(b) depends on the *debtor's* conduct, not the transferee's.[10] The jury's finding that GR Direct made the transfer "without receiving a reasonably equivalent value in exchange" when its remaining assets could not cover its debts does not speak to whether Global Rescue engaged in wrongful conduct by accepting the transfer. Commercial Club points to the availability of a judgment against the transferee as evidence that "Global Rescue's actions in accepting fraudulently transferred assets . . . create direct liability under—and constitute a violation of—the UVTA." But, as Global Rescue correctly observes, "the statute merely provides a mechanism by which a creditor may claw back assets. It says nothing about whether the transferee who receives assets is guilty of any tortious or wrongful conduct."

¶63　We do not foreclose the possibility that receipt of a constructively fraudulent transfer might constitute "improper means" for purposes of a tortious interference claim. But Commercial Club has not demonstrated that the district court's ruling in this case was in error. Because Commercial Club has not carried its burden of persuasion on appeal, we affirm the dismissal of the tortious interference claim.

---

10. Where the transfer is voidable under subsection (1)(a), a transferee's conduct is relevant to determining whether the good-faith purchaser exception applies. *See* Utah Code § 25-6-304 (providing that "a transfer or obligation is not voidable under Subsection 25-6-202(1)(a) against a person that took in good faith and for a reasonably equivalent value given the debtor"). But Commercial Club acknowledges that the good-faith purchaser exception does not apply here because the jury found that the transfer was voidable under subsection (1)(b).

CONCLUSION

¶64     We reverse the jury's verdict in favor of Commercial Club on its joint venture claim because there was no evidence that Global Rescue and GR Direct exercised mutual control over a separate business endeavor that was distinct from GR Direct itself. Because the attorney fees award was premised on the existence of a joint venture, we vacate the attorney fees award as well. We also vacate the district court's alter ego determination and remand for additional findings under the equitable prong of the alter ego test and for entry of an amended judgment reflecting those findings. Finally, we affirm the district court's entry of JNOV in favor of Global Rescue with respect to the tortious interference claim because Commercial Club has not carried its burden of persuasion on cross-appeal.

———————