2026 UT App 6

## THE UTAH COURT OF APPEALS

COMMERCIAL CLUB BUILDING LLC,
Appellee,
*v.*
GLOBAL RESCUE LLC,
Appellant.

Opinion
No. 20240124-CA
Filed January 23, 2026

Third District Court, Salt Lake Department
The Honorable Laura Scott
No. 170903867

William B. Ingram and Scarlet R. Smith,
Attorneys for Appellant

Matthew N. Evans, Whitney Hulet Krogue, and
Jacob G. Roberts, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

ORME, Judge:

¶1 This matter returns to us following our remand to the district court for entry of "additional findings under the equitable prong of the alter ego test and for entry of an amended judgment reflecting those findings." *Commercial Club Bldg. LLC v. Global Rescue LLC* (*Commercial Club I*), 2023 UT App 37, ¶ 64, 529 P.3d 382. On remand, the district court made detailed findings in support of its conclusion that observance of the separate corporate existence of Global Rescue LLC (Global Rescue) and its wholly owned subsidiary, GR Direct LLC (GR Direct), would promote injustice or lead to an inequitable result. Based on this conclusion, the court ruled in favor of Commercial Club Building LLC

(Commercial Club) on its alter ego theory of liability and entered an amended final judgment against Global Rescue.

¶2      In this second appeal, Global Rescue argues that (1) the district court's alter ego ruling constituted an abuse of discretion and (2) the amended final judgment included an erroneous prejudgment interest rate. We affirm on both points. The district court's equitable determination did not amount to an abuse of the court's considerable discretion, and the court correctly ruled that it was barred from amending the prejudgment interest rate because doing so exceeded the scope of the remand.

BACKGROUND

*The First Appeal*

¶3      As indicated, the present matter returns to us for a second time following our decision in *Commercial Club I*, 2023 UT App 37, 529 P.3d 382. Because the underlying facts were thoroughly addressed in that opinion, *see id.* ¶¶ 6–22, we will not, for the most part, repeat them here. In short, GR Direct, a wholly owned subsidiary of Global Rescue, entered a three-year lease with Commercial Club for office space in Salt Lake City. *Id.* ¶¶ 6–7. About one year into the lease, Global Rescue stopped funding GR Direct, causing it to cease operations, default on the lease, abandon the premises, and transfer its remaining assets back to Global Rescue. *Id.* ¶ 8.

¶4      Commercial Club sued both Global Rescue and GR Direct, alleging, as relevant here, breach of contract, breach of the lease under a theory of alter ego, and constructive fraudulent transfer. *Id.* ¶¶ 9–10. Commercial Club obtained default judgment against GR Direct for breach of contract after it failed to answer the complaint. *Id.* ¶ 12. Litigation continued between Commercial Club and Global Rescue, eventually proceeding to a jury trial. *Id.* ¶¶ 13, 16.

¶5     At trial, the jury was provided a special verdict form asking it to make findings on the "formalities requirement" prong of the alter ego analysis (the Formalities Requirement). *Id.* ¶ 17. The special verdict form did not address the 'fairness requirement' prong (the Fairness Requirement), which was left to the district court's judgment. *Id.* (citing *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 14, 284 P.3d 630). The jury made the following findings on the Formalities Requirement that weighed in favor of alter ego:

> GR Direct was undercapitalized, Global Rescue siphoned GR Direct's funds, GR Direct did not have separate corporate records, Global Rescue used GR Direct as a façade for its own operations, and there was such a unity of interest and ownership between Global Rescue and GR Direct that the separate personalities of the two no longer existed.

*Id.* (quotation simplified). As weighing against alter ego, the jury found that "GR Direct did not fail to observe corporate formalities and had its own functioning officers and directors other than those employed by Global Rescue."[1] *Id.*

¶6     Next, the district court addressed the Fairness Requirement portion of the alter ego analysis, i.e., "whether the observation of the corporate form would sanction a fraud, promote injustice or an inequitable result would follow." *Id.* ¶ 18 (quotation simplified). Although the court found "no evidence of fraud," it nonetheless ruled in favor of Commercial Club, explaining, "Under these circumstances and considering all the facts and testimony and other evidence at trial, I do find it would

---

1. The jury also returned a verdict in favor of Commercial Club on its claim for constructive fraudulent transfer in the amount of $705,128.35. But in a posttrial ruling, the trial court significantly reduced the damages on that claim to $77,531.35.

promote an injustice or an inequitable result would follow if I were to recognize that separate corporate existence." *Id.* (quotation simplified).

¶7      In the prior appeal, Global Rescue argued, in relevant part, that the district court abused its discretion in concluding that the Fairness Requirement was satisfied. *Id.* ¶¶ 46, 49. Because the district court's ruling was not clear as to "what circumstances, facts, testimony, or other evidence presented at trial the court relied on," *id.* ¶ 51, we were unable to "ascertain the basis for the court's determination that failure to pierce the corporate veil would promote injustice or produce an inequitable result," *id.* ¶ 52. Accordingly, we vacated the judgment on the alter ego theory and remanded the matter for the district court to make "additional findings under the [Fairness Requirement] of the alter ego test and for entry of an amended judgment reflecting those findings." *Id.* ¶ 64.

*The Fairness Requirement on Remand*

¶8      On remand, following supplemental briefing and a hearing on the matter, the district court ruled once more that the Fairness Requirement was satisfied. In a detailed written order, the court again concluded that while it "did not find actual fraud," it did "find that recognizing the corporate form between GR Direct and Global Rescue would promote an injustice and/or an inequitable result would follow."

¶9      In support of this conclusion, the court pointed to several findings made by the jury in connection with the Formalities Requirement and constructive fraudulent transfer claim: GR Direct was undercapitalized; Global Rescue siphoned funds from GR Direct; GR Direct "did not have separate corporate records"; "Global Rescue used GR Direct as a façade for its own operations"; the two entities shared "such a unity of interest . . . that the separate personalities of the two no longer existed"; GR Direct transferred its assets to Global Rescue without receiving a

"reasonably equivalent value for the transfer"; "GR Direct's remaining assets were unreasonably small in relation to the business and transactions and/or . . . GR Direct intended to incur debts beyond its ability to pay as they become due"; and GR Direct's transfer of assets harmed Commercial Club, and Global Rescue "was a substantial factor in causing" that harm.

¶10  The court also pointed to other evidence, presented both at trial and in a posttrial motion, as "confirm[ing]" the following:

- Unlike the typical parent-subsidiary relationship "wherein the parent may be entitled to capture upstream profits, . . . Global Rescue captured all of the revenue of GR Direct." That is, "GR Direct did not have a right to share in the revenue or profits of the business," and "there was no mechanism for GR Direct to earn any income to pay its expenses." Accordingly, "Global Rescue alone funded GR Direct's expenses," including compensating GR Direct's employees.

- "Global Rescue exercised control over GR Direct" to the extent that "GR Direct had limited control to manage its own day to day operations," "GR Direct was merely Global Rescue's instrument for its own benefit," and "GR Direct was operated solely in Global Rescue's interest."

- GR Direct sold the same product as Global Rescue and it did not "have any customers per se" because "[w]hen a customer purchased a membership, the customer's relationship was with Global Rescue not GR Direct."

¶11  The court next stated that "all the factors" weighing in favor of the Formalities Requirement were also relevant to the Fairness Requirement but that "[t]here needs to be a connection between the two prongs, and that connection needs to be direct." To that end, the court considered "whether Global Rescue itself played a role in the inequitable conduct," ultimately determining

that Global Rescue was directly responsible for GR Direct's inability to retain sufficient funds to make the payments owed on the lease. The court pointed to Global Rescue's control of GR Direct, its siphoning of GR Direct's revenue, and its causing GR Direct to transfer all assets to Global Rescue upon closing operations as the bases for this determination. The court thus concluded that "[i]t would be unjust and inequitable for Global Rescue to capture all of the revenue of GR Direct without having corresponding obligations to pay the expenses of GR Direct." The court also indicated that GR Direct's "lack of capitalization further underscores the unfairness and inequity of respecting the separate entity privilege" because Global Rescue neither adequately funded GR Direct nor allowed it to retain sufficient revenue to cover its liabilities.

¶12    For these reasons, the court found in favor of Commercial Club on the Fairness Requirement and, thus, on its alter ego theory. In so concluding, the court reiterated that it attempted to "link" the factors of the Formalities Requirement "with injustice and inequity" in the Fairness Requirement and that its focus was on the events following the signing of the lease and "the ways in which Global Rescue ensured that GR Direct would never have the ability to pay the lease payments on its own."

*The Prejudgment Interest Rate*

¶13    In 2020, prior to the first appeal in this matter, the district court entered final judgment in Commercial Club's favor in the principal amount of $233,315.47, which included the $77,531.35 in damages on Commercial Club's claim for constructive fraudulent transfer. *See supra* note 1. The court further awarded Commercial Club 10% prejudgment interest pursuant to Utah Code section 15-1-1(2).

¶14    On remand, following the court's ruling on the Fairness Requirement, Commercial Club filed a proposed amended final judgment, reflecting the same principal amount and prejudgment

interest rate as the original final judgment. Global Rescue opposed the proposed judgment, asserting that it "include[d] prejudgment interest at an increased rate of 10% per annum under the incorrect statute." Citing *Diversified Striping Systems Inc. v. Kraus*, 2022 UT App 91, ¶ 92, 516 P.3d 306, Global Rescue argued that because the amount of Commercial Club's losses became fixed prior to section 15-1-1(2) going into effect, the applicable statute governing the prejudgment interest rate was Utah Code section 15-1-4(3)(a). The district court initially agreed with Global Rescue and entered an amended final judgment in Commercial Club's favor for the principal amount but, pursuant to section 15-1-4(3)(a), with a lower prejudgment interest rate at "the federal postjudgment interest rate as of January 1 of each year, plus 2%."

¶15 Commercial Club then moved to amend the final judgment for a second time, arguing that Global Rescue waived its challenge to the 10% prejudgment interest rate by not raising the issue in the first appeal. At a hearing on the second motion to amend, the district court agreed that "there are grounds" to determine that Global Rescue waived the issue by not raising it prior to the first appeal or in the first appeal. But the court expressed some unease with entering an incorrect interest rate based on "some technicality." The court then stated that regardless of the waiver issue, *Commercial Club I*'s instructions were "very specific that the only thing [the district court] was to do on remand was make additional findings with respect to [the Fairness Requirement] of the alter ego determination." Accordingly, the court concluded that it could not address the prejudgment interest rate because it fell outside the scope of the remand. The court thus entered a second amended final judgment in Commercial Club's favor in the principal amount of $233,315.47, with a prejudgment interest rate of 10%.

¶16 Global Rescue appeals.

ISSUES AND STANDARDS OF REVIEW

¶17    In this second appeal, Global Rescue again challenges the district court's analysis of the Fairness Requirement of the alter ego theory. "A trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy, and it will not be overturned unless it has abused its discretion." *Commercial Club I*, 2023 UT App 37, ¶ 25, 529 P.3d 382 (quotation simplified). Moreover, "because a trial court is in an advantaged position to consider equities, we give considerable deference to its findings and judgment." *Id.* (quotation simplified).

¶18    Global Rescue next argues that the district court erred in concluding that it was precluded from addressing a challenge to the 10% prejudgment interest rate on remand. This presents a question of law that we review for correctness. *See Brady v. Park*, 2019 UT 16, ¶ 30, 445 P.3d 395; *Woodward v. LaFranca*, 2016 UT App 141, ¶ 10, 381 P.3d 1125, *cert. denied*, 384 P.3d 570 (Utah 2016).

ANALYSIS

I. The Fairness Requirement

¶19    Under the alter ego doctrine, "a party may pierce the corporate veil and obtain a judgment against the individual shareholders for a cause of action that arose from a dispute with the corporate entity if the plaintiff proves that the corporation is acting as an alter ego of its shareholders." *Commercial Club I*, 2023 UT App 37, ¶ 43, 529 P.3d 382 (quotation simplified). Thus, alter ego is a theory of liability rather than an independent claim for relief. *See Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 6 n.1, 284 P.3d 630; *Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968.

¶20    In deciding whether alter ego is applicable, courts must generally "balance piercing and insulating policies and will only reluctantly and cautiously pierce the corporate veil." *Jones*

*& Trevor Mktg.*, 2012 UT 39, ¶ 15 (quotation simplified). To prevail under a theory of alter ego, a party must satisfy a two-prong test. Under the first prong (the Formalities Requirement), "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals." *Id.* ¶ 14 (quotation simplified). And under the second prong (the Fairness Requirement), the party must show that "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Id.* (quotation simplified). "Ultimately, the decision to pierce the corporate veil is a highly factual determination, and each case should be determined on its particular facts." *Id.* ¶ 15.

¶21 Here, only the Fairness Requirement is at issue. To succeed on this prong, a party must "appeal to the court's equitable powers and articulate how the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Id.* ¶ 20 n.6 (quotation simplified). And unlike the Formalities Requirement, for which there are seven established factors a court may consider when deciding that prong,[2] *see id.* ¶¶ 16, 18, 20, there are no such formulaic factors for the Fairness Requirement, *id.* ¶ 20. Rather, the Fairness Requirement "is

---

2. Those factors are

(1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; [and] (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders[.]

*Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 16, 284 P.3d 630 (quotation simplified). *See id.* ¶ 20.

simply an appeal to the conscience of the court and the court's equitable powers." *Id.*

¶22 Global Rescue argues that the district court's Fairness Requirement determination constituted an abuse of discretion because it improperly relied on the Formalities Requirement factors. *See supra* note 2, ¶¶ 9, 11. That is, Global Rescue asserts that the court's error "stems from an effort to 'link' the first prong with the second." In Global Rescue's view, to establish the Fairness Prong, there must be findings "sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *See Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1176 (C.D. Cal. 2016) (quotation simplified). Global Rescue further contends that a court should not rely "too heavily in isolation on the factors of inadequate capitalization or concentration of ownership and control." *See Mid-Century Ins. Co. v. Gardner*, 11 Cal. Rptr. 2d 918, 923 (Cal. Ct. App. 1992). But Global Rescue asserts that in the case at hand, the district court "relied almost exclusively on the findings that [GR Direct] was undercapitalized and other findings that were made in support of" the Formalities Requirement. We disagree.[3]

¶23 As an initial matter, as stated above, in Utah the Fairness Requirement has no established factors and "is simply an appeal to the conscience of the court and the court's equitable powers." *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 20. At most, in discussing alter

---

3. Global Rescue also emphasizes the district court's finding that that there was no fraud. But this finding is not determinative because resulting injustice or inequity are also sufficient to satisfy the Fairness Requirement. *See Jones & Trevor Mktg.*, 2012 UT 39, ¶ 14 (stating that under the Fairness Requirement, "it is not necessary that the plaintiff prove actual fraud, but must only show that failure to pierce the corporate veil would result in an injustice") (quotation simplified).

ego in the parallel context of reverse corporate piercing, our Supreme Court has mandated that "it must be shown that the corporation itself played a role in the inequitable conduct at issue." *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 26 (Utah 1990). And here, the district court certainly determined as much.

¶24 The court's analysis on the Fairness Requirement expressly focused on "the ways in which Global Rescue ensured that GR Direct would never have the ability to pay the lease payments on its own." In other words, the court considered the level of culpability Global Rescue shared in the harm Commercial Club suffered. To that end, in evaluating the Fairness Requirement, the court considered several of the jury's findings—made in connection with the Formalities Requirement and constructive fraudulent transfer claim—as well as its own findings based on the evidence. These included:

- "Global Rescue used GR Direct as a façade for its own operations," and "GR Direct was merely Global Rescue's instrument for its own benefit";

- "Global Rescue exercised control over GR Direct" to the point that "GR Direct had limited control to manage its own day to day operations";

- "Global Rescue captured all of the revenue of GR Direct" and, accordingly, "alone funded GR Direct's expenses";

- "GR Direct's remaining assets were unreasonably small in relation to the business and transactions and/or . . . GR Direct intended to incur debts beyond its ability to pay as they become due"; and

- GR Direct, after ceasing operations, transferred all its assets to Global Rescue without receiving a "reasonably equivalent value for the transfer."

¶25 Based on these findings, Global Rescue was hardly an innocent, uninvolved bystander. On the contrary, the district court found that Global Rescue was *directly* responsible for Commercial Club's inability to recover payments owed on the lease, which was one of the articulated reasons the court gave for its conclusion that failure to pierce the corporate veil would be unjust and inequitable. Accordingly, because the district court addressed the level of Global Rescue's culpability in Commercial Club's losses, we cannot say that it abused its equitable discretion.

¶26 Additionally, although there was some overlap between these facts and some of the Formalities Requirement's established factors—including undercapitalization and ownership control, which the court certainly did not rely exclusively on—they were also relevant to the court's inquiry into Global Rescue's level of culpability under the Fairness Requirement. The court did not, as Global Rescue seems to suggest, apply the same analysis under both prongs. Although facially similar, whether corporate formalities are met and whether the corporation exercised its power to harm the plaintiff are distinct inquiries. The district court thus did not abuse its discretion in this regard.

¶27 Global Rescue next argues that the Fairness Requirement "cannot be satisfied" because the alter ego theory is inconsistent with the terms of the lease agreement. Specifically, Global Rescue asserts that Commercial Club—a "sophisticated" commercial landlord—knew that GR Direct and Global Rescue were distinct entities, yet it failed to sufficiently investigate GR Direct's ability to pay and to include mechanisms in the lease to protect itself from loss, such as guarantees or security agreements.

¶28 To be sure, "courts have been extraordinarily reluctant to lift the veil in contract cases . . . where the creditor has willingly transacted business with the corporation." *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 28, 147 P.3d 515 (quotation simplified), *modified on other grounds by Jones & Trevor Mktg. v. Lowry*, 2012 UT

39, 284 P.3d 630. As such, the considerations Global Rescue raises are certainly factors that may be relevant to a determination of the Fairness Requirement. But they are not necessarily determinative considerations. *See id.* ("The voluntary contractual nature of the parties' relationships was simply one of multiple factors to which the trial court gave weight in making its highly factual alter ego determination."). Here, as recounted above, the district court expressly considered the atypical parent-subsidiary relationship between Global Rescue and GR Direct through which Global Rescue was directly responsible for GR Direct's inability to make payments on the lease. Thus, we cannot say that the district court abused its discretion in concluding, even in light of the contractual nature of the dispute, that observance of the corporate formalities would promote injustice or lead to an inequitable result.

¶29    Lastly, Global Rescue argues that because Commercial Club already had a remedy for the undercapitalization of GR Direct, i.e., a claim for constructive fraudulent transfer (for which it obtained a $77,531.35 judgment), it was not entitled to an additional alter ego remedy. But although the district court considered GR Direct's undercapitalization, it certainly was not the sole basis for the court's decision to exercise its equitable powers under the alter ego theory. And Global Rescue cites no authority in support of its contention that partial recovery through an alternative theory precludes full recovery through alter ego. Therefore, Global Rescue has not carried its burden of persuasion on this argument, and we do not consider it further. *See Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903.

¶30    In sum, the district court did not exceed its considerable discretion in determining that the Fairness Requirement was satisfied and thereby finding Global Rescue liable under the theory of alter ego.

### II. The Prejudgment Interest Rate

¶31    Global Rescue next contends that the district court erred in concluding that it was barred from addressing Global Rescue's challenge to the 10% prejudgment interest rate because the issue exceeded the scope of our remand. Global Rescue asserts that because this court, in the first appeal, remanded the matter for the district court to make additional findings on the Fairness Requirement, "[a]ny request for prejudgment interest would necessarily have to be a request under the new alter ego determination." But this assertion directly conflicts with this court's instructions for remand.

¶32    "A remand with specific instructions to the trial court necessarily precludes the trial court from considering issues outside the scope of remand[.]" *Woodward v. LaFranca*, 2016 UT App 141, ¶ 8, 381 P.3d 1125, *cert. denied*, 384 P.3d 570 (Utah 2016). In other words, "when an appeals court vacates a judgment with narrowing instructions which direct the district court to consider certain issues, the district court does not have a mandate to reconsider other issues except in extraordinary circumstances."[4]

---

4. "One such extraordinary circumstance is a dramatic change in controlling legal authority." *Wasatch County v. Okelberry*, 2015 UT App 192, ¶ 32, 357 P.3d 586 (quotation simplified), *cert. denied*, 364 P.3d 48 (Utah 2015). Under this exception, a district court is not absolutely bound by an appellate mandate "where the policy of the law has been changed, by legislative enactment or decision of a higher court, while the case is still pending resolution" and "in the interim between the rendition and implementation of the mandate." *Id.* ¶ 34 (quotation simplified). *See id.* ¶¶ 35–36. We note that *Diversified Striping Systems Inc. v. Kraus*, 2022 UT App 91, 516 P.3d 306—the case on which the district court relied when it initially concluded that its prior entry of 10% prejudgment interest was incorrect—was issued after the district court entered

(continued…)

*Wasatch County v. Okelberry*, 2015 UT App 192, ¶ 32, 357 P.3d 586 (quotation simplified), *cert. denied*, 364 P.3d 48 (Utah 2015).

¶33     In *Commercial Club I*, this court remanded the matter "for additional findings under the [Fairness Requirement] of the alter ego test and for entry of an amended judgment *reflecting those findings*." 2023 UT App 37, ¶ 64, 529 P.3d 382 (emphasis added). Thus, any amendment to the final judgment was to be dependent on the district court's findings on the Fairness Requirement. And because the issue of the propriety of the 10% prejudgment interest rate is unrelated to the additional findings the district court made on remand, it necessarily falls outside the scope of the remand.[5]

¶34     Global Rescue nevertheless argues that raising the issue of prejudgment interest on remand is permissible under *Brady v. Park*, 2019 UT 16, 445 P.3d 395. But *Brady* is readily distinguishable. In that case, our Supreme Court rejected the appellants' argument that the trial court was precluded on remand from deciding whether payment of a 10% late fee was required to bring current the note at issue in that matter. *Id.* ¶ 43. The judgment had previously been reversed and the matter remanded because the trial court had applied an incorrect legal test when it ruled that the late fee was unenforceable. *Id.* ¶ 47. But

---

the original final judgment but before this court issued *Commercial Club I*. But because Global Rescue has not invoked this exception, much less addressed the question of whether it applies given the timing of *Diversified Striping*'s issuance, we do not address the exception further.

5. Global Rescue also argues that Commercial Club is not entitled to any prejudgment interest whatsoever because Global Rescue was not a party to the lease. But this argument falls outside the scope of the remand because it is also unaffected by the additional facts the district court found with respect to the Fairness Requirement.

on remand, after applying the correct legal test, the trial court concluded that the late fee was enforceable after all. *Id.* ¶ 23. The parties then submitted widely differing proposed accountings, which was partially due to their disagreement on whether the late fee had to be paid to bring the note current. *Id.* ¶¶ 24–25. The trial court ruled in the appellees' favor on that issue, which the appellants then challenged in the next appeal. *Id.* ¶ 25. Our Supreme Court ruled that the trial court was free on remand to address that issue because the court did not have an opportunity to rule on the issue prior to the remand and thus there was no order the parties could have challenged in the earlier appeal. *Id.* ¶ 51.

¶35    Conversely, in this case, the district court's ruling that the Fairness Requirement had been satisfied remained unchanged on remand. And prior to the first appeal, the court included the 10% prejudgment interest rate in the original final judgment, which Global Rescue could have challenged, but did not challenge, in the prior appeal. For these reasons, the district court correctly ruled that it could not revisit the prejudgment interest rate on remand.

CONCLUSION

¶36    The district court did not abuse its discretion in ruling that the Fairness Requirement was satisfied and, accordingly, in finding in favor of Commercial Club on its alter ego theory. The court also correctly concluded that it was precluded from addressing the issue of prejudgment interest on remand.

¶37    Affirmed.

————————